STATE OF CONNECTICUT *v.* EARL BADGETT
(12142)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

Argued April 9—decision released July 8, 1986

*Martin Zeldis,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Judith Rossi,* deputy assistant state's attorney, with whom, on the brief, were *John T. Redway,* state's attorney, and *James G. Clark,* deputy assistant state's attorney, for the appellee (state).

SHEA, J. The defendant, Earl Badgett, has appealed from his conviction upon a conditional plea of nolo contendere to a substitute information charging him with illegal possession and transportation of heroin with intent to sell in violation of General Statutes (Rev. to 1981) § 19-480 (a).[1] The defendant has raised two claims

---

[1] General Statutes (Rev. to 1981) § 19-480 (a) (presently § 21a-277 [a]) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance, other than marihuana, or a narcotic substance except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than three thousand dollars or be both fined and imprisoned and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than five thousand dollars, or be both fined and imprisoned."

of error: (1) that the trial court failed properly to ascertain whether his nolo contendere plea was knowingly, voluntarily and intelligently made; and (2) that the trial court erroneously denied his motion to suppress evidence seized as a result of the warrantless search of the automobile that he was driving at the time of his arrest.[2] We find no error in the trial court's acceptance of the defendant's plea. Although we conclude that the evidence was illegally seized from the automobile, we remand the case to the trial court for further proceedings to consider whether the evidence would have been inevitably discovered legally.

The state recited the following factual basis for the defendant's plea at the time it was accepted by the trial court: On March 14, 1982, the defendant, driving a blue Cadillac Eldorado, was stopped for speeding while traveling north on Interstate 91 in Middletown by state trooper Peter Naples. After speaking with the defendant and obtaining his operator's license, Naples returned to his police cruiser to prepare the speeding ticket. He was then informed by the police dispatcher that there were outstanding arrest warrants for the defendant. The defendant was arrested pursuant to

---

[2] On April 11, 1984, the defendant attacked the validity of his plea by a habeas corpus petition alleging the ineffective assistance of counsel and an improper canvass. On May 31, 1985, the trial court, *Kline, J.*, granted the petition on the ground of improper canvass only. The state, after receiving permission from the court, appealed the decision to the Appellate Court. The state then filed a motion for rectification with the trial court pursuant to Practice Book § 3082. Because of the pendency of this appeal, the trial court, *Kline, J.*, sua sponte, vacated its earlier order that the plea canvass was improper. The defendant filed a motion to review with the Appellate Court. After the appeal was transferred to this court, we denied the motion to review. The appeal was then withdrawn. Our resolution of the first issue on appeal has no effect on the right of the defendant to pursue his unresolved habeas claim because our review of the plea canvass is based solely on the record before us. In the habeas proceeding the defendant is free to go beyond the transcript of the plea proceeding to show that he did not understandingly waive his right to a jury trial. *State* v. *Martin,* 197 Conn. 17, 25–26, 495 A.2d 1028 (1985).

these warrants and was removed from his vehicle. A search of the vehicle was then conducted which uncovered a black bag containing a number of glassine envelopes holding a white powdery substance.

After laboratory tests established that the white substance in the black bag was heroin, the defendant was arrested on April 15, 1982, on charges of possession of narcotics, in violation of General Statutes (Rev. to 1981) § 19-481 (a), and possession of narcotics with intent to sell by a non-drug dependent person, in violation of General Statutes (Rev. to 1981) § 19-480a (a). By a substitute information dated June 22, 1982, the state abandoned the simple possession count and charged the defendant only with possession with intent to sell by a non-drug dependent person. The defendant pleaded not guilty and elected a jury trial.

On April 25, 1982, the defendant filed a motion to suppress the heroin seized during the warrantless search of the vehicle he was driving. On February 17, 1983, after a full evidentiary hearing, the trial court denied the defendant's motion to suppress. On the same date, a second substitute information was filed, charging the defendant with illegal possession and transportation of heroin with intent to sell in violation of General Statutes (Rev. to 1981) § 19-480 (a), to which the defendant entered a conditional plea of nolo contendere, specifically reserving the right to appeal the court's denial of his motion to suppress. General Statutes § 54-94a; *State* v. *Madera*, 198 Conn. 92, 98–99, 503 A.2d 136 (1985). On March 21, 1983, the trial court sentenced the defendant to fifteen years imprisonment.

I

The defendant first claims that his plea of nolo contendere was obtained in violation of due process because the trial court failed to ascertain whether the

plea was knowingly, voluntarily and intelligently made.[3] Specifically, the defendant asserts that the plea canvass was inadequate because the trial court did not advise him of his rights in accordance with the strictures of Practice Book §§ 711[4] and 712[5] and also in accordance with federal constitutional principles as enunciated in *Boykin* v. *Alabama,* 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). Neither the Practice Book violations nor the constitutional claims were raised by the defendant by a motion to withdraw his plea before sentence was imposed by the trial court.

---

[3] Although General Statutes § 54-94a allows a defendant to plead nolo contendere conditional on the right to appeal, the denial of either a motion to suppress based on search and seizure grounds, or a motion to dismiss, the defendant can properly attack the validity of his conditional plea on appeal on the basis that it was not knowingly, voluntarily and intelligently made. See *State* v. *Madera,* 198 Conn. 92, 107–108, 503 A.2d 136 (1985).

[4] "[Practice Book] Sec. 711. —— ——ADVICE TO DEFENDANT
"The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he fully understands:
"(1) The nature of the charge to which the plea is offered;
"(2) The mandatory minimum sentence, if any;
"(3) The fact that the statute for the particular offense does not permit the sentence to be suspended;
"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and
"(5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury or a judge and that at that trial he has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself."

[5] "[Practice Book] Sec. 712. —— ——INSURING THAT THE PLEA IS VOLUNTARY
"The judicial authority shall not accept a plea of guilty or nolo contendere without first determining, by addressing the defendant personally in open court, that the plea is voluntary and is not the result of force or threats or of promises apart from a plea agreement. The judicial authority shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the prosecuting authority and the defendant or his counsel."

Practice Book § 720; *State* v. *James,* 197 Conn. 358, 360, 497 A.2d 402 (1985); *State* v. *Martin,* 197 Conn. 17, 495 A.2d 1028 (1985).

The acceptance of a plea of nolo contendere is governed by federal constitutional standards as well as state rules of practice. " 'Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination. . . [s]econd, is the right to trial by jury . . . [t]hird, is the right to confront one's accusers.' *Boykin* v. *Alabama,* [supra]. Further, under the Connecticut rules of practice, a trial judge must not accept a plea of nolo contendere without first addressing the defendant personally and determining that the plea is voluntarily made under Practice Book § 712 and that the defendant fully understands the items enumerated in Practice Book § 711. *State* v. *Godek,* 182 Conn. 353, 357, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981); *State* v. *Battle,* 170 Conn. 469, 473, 365 A.2d 1100 (1976); *State* v. *Bugbee,* 161 Conn. 531, 533, 290 A.2d 332 (1971)." *State* v. *Martin,* supra, 22–23.

Ordinarily, the defendant's failure to raise a timely claim of error before the trial court renders the claim unreviewable on appeal. Practice Book §§ 854, 3063. "Only in the most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." *State* v. *Evans,* 165 Conn. 61, 69, 327 A.2d 576 (1973). We have recognized, however, as an "exceptional circumstance" within this doctrine, certain claims involving colorable deprivations of fundamental constitutional rights. *State* v. *Roma,* 199 Conn. 110, 113, 505 A.2d 717 (1986); *State* v. *Evans,* supra, 70.

To the extent that the defendant's claim implicates the failure of the trial court to apprise him of the constitutionally mandated requirements for a valid plea, as delineated in *Boykin,* his claim is properly reviewable despite the absence of a timely motion to withdraw the plea. *State* v. *Amarillo,* 198 Conn. 285, 313 n.16, 503 A.2d 146 (1986). While the federal constitution requires that the record of the plea canvass indicate the voluntariness of any waiver of the three core constitutional rights delineated in *Boykin,* it does not require that the trial court go beyond these "constitutional minima." *United States* v. *Dayton,* 604 F.2d 931, 935 n.2 (5th Cir. 1979) (en banc). A defendant can voluntarily and understandingly waive these rights without literal compliance with the prophylactic safeguards of Practice Book §§ 711 and 712. Therefore, although the Practice Book provisions were designed to reflect the principles embodied in *Boykin; State* v. *Godek,* 182 Conn. 353, 357, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981); *Blue* v. *Robinson,* 173 Conn. 360, 373, 377 A.2d 1108 (1977); precise compliance with the provisions is not constitutionally required. Thus, our analysis will focus on whether the federal constitutional principles of *Boykin* were satisfied rather than on meticulous compliance with the provisions of the Practice Book.

Under *Boykin,* in order for a plea to be knowingly, voluntarily and intelligently made, a trial court is required to advise a defendant that his plea operates as a waiver of three fundamental constitutional rights—jury trial, confrontation and self-incrimination. The defendant in this case does not claim that the trial court neglected to advise him concerning the right to confrontation, as the record expressly indicates that this condition was satisfied.[6] The defendant's principal con-

---

[6] "The Court: Do you understand . . . that you are giving up your right to confront the witnesses against you?

"The Defendant: Yes, sir."

stitutional claim is that the court did not inform him of his right to a trial by jury. During the plea canvass, the trial court asked the defendant if he understood that "you are giving up your right to trial at this present time?" Although the defendant responded affirmatively to that inquiry, he claims that the trial court's failure to utilize the term "jury trial" prevented him from making a knowing waiver of the right and, therefore, rendered his plea constitutionally defective. While we do not condone the court's failure expressly to reference the right to a "jury" trial, we conclude that the inquiry was constitutionally sufficient under the circumstances of this case.

At the time of his initial plea of not guilty to both the original and the first substitute informations, the defendant must have been advised of his right to a trial by either the court or a jury, because he elected a jury trial. We cannot imagine that the slight differences between the charges in the initial information and the second substitute information could reasonably have led the defendant to presume that his right to a jury trial would be altered. We also find it of no moment that the judge who presided at the time the original not guilty plea was entered did not also accept the defendant's plea of nolo contendere or that the initial plea was entered some ten months before the nolo contendere plea. The defendant's trial by jury was scheduled to begin at the time the defendant elected to withdraw his earlier plea of not guilty. The defendant, through counsel, informed the court that he desired to "withdraw the prior pleas and elections on the files as they stand and . . . [enter] a conditional plea of nolo contendere." The court's response to this request, "the prior pleas and *elections* are withdrawn and vacated," clearly refers to the defendant's withdrawal of his election for a jury trial. Although *Boykin* requires that relinquishment of the right to a trial by jury must be evident

and cannot be presumed from a "silent" record, we conclude that the trial court's express mention of waiver of the right to *trial,* combined with the defendant's prior election for a jury trial, his experience with criminal proceedings and apparently adequate representation by counsel, satisfy the constitutional requirement.

The defendant's secondary claim of a constitutional violation, conceded at oral argument to be his weaker claim, involves the trial court's failure to advise him of his right to be free of compulsory self-incrimination. During the plea canvass the trial court asked the defendant if he realized "that you are giving up your right to silence at this point." The defendant responded affirmatively. The trial court used the more common vernacular, rather than the precise language of *Boykin.* Literal compliance, however, is *not* constitutionally required. See *State* v. *Godek,* supra, 360. This court, indeed, has in the past referred to a defendant's right to be free of compulsory self-incrimination as the right "to remain silent." *State* v. *Deboben,* 187 Conn. 469, 471–72, 446 A.2d 828 (1982). In fact, a defendant might better understand his right against compulsory self-incrimination by the use of the term "right to remain silent." See *State* v. *Lopez,* 197 Conn. 337, 348, 497 A.2d 390 (1985); *State* v. *Suggs,* 194 Conn. 223, 226–27, 478 A.2d 1008 (1984). Although the court did not specifically advise the defendant that he had the right not to be compelled to incriminate himself, the substance of that right was sufficiently conveyed. *United States* v. *Caston,* 615 F. 2d 1111, 1115 (5th Cir. 1980).[7]

---

[7] We also reject the defendant's contention that the trial court's failure to inform him of his right to continued assistance of counsel in the event of a trial rendered his nolo contendere plea defective. See Practice Book § 711 (5). Although this right is not included within the requirements of *Boykin* v. *Alabama,* 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), we evaluate the claim because it does involve the defendant's knowing waiver of his sixth amendment right to counsel. *Carnley* v. *Cochran,* 369 U.S. 506, 513, 82 S. Ct. 884, 8 L. Ed. 2d 70 (1962). The defendant was

## II

The defendant also claims that the warrantless search of the black bag and seizure of heroin violated his rights under the fourth and fourteenth amendments to the United States constitution. The trial court denied the defendant's motion to suppress based on three exceptions to the requirement that all searches executed by police be conducted with a warrant. We conclude that the warrantless search was unconstitutional.

Some additional facts are necessary to the disposition of this claim: After state trooper Naples stopped the defendant for speeding and acquired his driver's license, he returned to his vehicle to prepare the ticket. While in his cruiser, parked twenty-five feet behind the defendant's vehicle, Naples observed that the defendant was moving around in the car, leaning towards the middle of the front seat and bending down. Because of these "unusual" movements, the trooper contacted state police headquarters in order to receive information relating to the defendant's license and possible suspension. He was informed by the dispatcher that there were outstanding arrest warrants for the defendant for various drug and weapons charges. He was also advised

represented by counsel throughout the pretrial proceedings, including the hearing on the motion to suppress and the proceeding in which the defendant withdrew his earlier plea and entered his nolo contendere plea. See *State* v. *Suggs,* 194 Conn. 223, 226–27, 478 A.2d 1008 (1984). The trial court inquired of the defendant whether he understood the nature and import of the conditional nolo contendere plea. An examination of the record establishes that the decision to enter a conditional nolo contendere plea was a tactical one and the product of discussion between the defendant and his counsel. It would "defy reality to suppose that [the defendant] had any doubts" about his continued right to assistance of counsel had he not elected to enter the conditional plea. *United States* v. *Saft,* 558 F.2d 1073, 1080 (2d Cir. 1977); *State* v. *Suggs,* supra. Further, there is no indication that counsel intended to abandon the defendant if he persisted in his not guilty plea and went to trial. See *United States* v. *Saft,* supra.

that the defendant was not the registered owner of the Cadillac. An additional trooper was dispatched to the scene by headquarters in order to assist Naples. Naples was then advised that the warrants for the defendant's arrest were still active and that the defendant might have in his possession one or two sawed-off shotguns. After the backup officer, Karl Kiernan, arrived on the scene, the troopers cautiously approached the defendant's vehicle and instructed him to exit the car. The defendant complied with the request. The troopers arrested the defendant and conducted a "pat-down" search of the defendant's person but discovered nothing. Because of his large size the troopers were unable to handcuff the defendant behind his back, which was the departmental policy, and, therefore, had to handcuff him in front of his body. The defendant was advised of his rights and the charges against him, placed in the front passenger seat of Naples' cruiser and secured by the seat belt and shoulder harness.

The troopers then returned to the Cadillac in order to search it for narcotics and weapons. Naples searched the front seat of the vehicle from the driver's door, focusing on the area where the defendant had been making the unusual movements. He observed a blue windbreaker jacket partially hidden underneath the seat. When he pulled it out, a black zippered bag fell out of the windbreaker onto the floor of the car. The bag was approximately ten inches long, two inches wide and three to four inches high. Naples did not open the bag but did feel the outside and suspected that it contained narcotics or perhaps a handgun. He left the bag on the front seat of the defendant's vehicle and discontinued his search. He then returned to his vehicle and summoned a police wrecker in order to tow the defendant's vehicle to state police headquarters. Without informing his fellow officer, Kiernan, who was still

searching the defendant's vehicle, that he was leaving the scene or that he had discovered the black bag, Naples left the scene with the defendant.

At approximately the same time that Naples departed from the scene with the defendant, trooper Kiernan, who had been searching the rear of the automobile, noticed the black bag in the front seat. Kiernan first felt the bag in order to determine whether it contained a weapon, and then opened it. Immediately after Kiernan discovered the heroin in the bag he noticed that trooper Naples and the defendant were "driving off." Kiernan did not continue to search the vehicle. Shortly thereafter, the police wrecker arrived and brought the vehicle to headquarters. Kiernan had removed the black bag and its contents and brought it with him to headquarters. Pursuant to a search warrant, the automobile was searched at the police station. The search revealed no weapons or narcotics.

The Fourth Amendment to the United States constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures." Ordinarily, police may not conduct a search unless they first obtain a search warrant from a neutral magistrate after establishing probable cause. "[A] search conducted without a warrant issued upon probable cause is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' " *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), quoting *Katz* v. *United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *Coolidge* v. *New Hampshire,* 403 U.S. 443, 454–55, 91 S. Ct. 2022, 29 L. Ed. 2d 564, reh. denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120 (1971); see *Stoner* v. *California,* 376 U.S. 483, 486, 84 S. Ct. 889, 11 L. Ed. 2d 856, reh. denied, 377 U.S. 940, 84 S. Ct. 1330, 12 L. Ed. 2d 303 (1964); *State* v. *Zindros,*

189 Conn. 228, 237, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984). Three recognized exceptions to the warrant requirement, upon which the trial court relied, are (1) where searches have been undertaken "incident to a lawful custodial arrest"; *New York* v. *Belton,* 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981); *United States* v. *Robinson,* 414 U.S. 218, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973); *Chimel* v. *California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969); *State* v. *Shaw,* 186 Conn. 45, 48, 438 A.2d 872 (1982); (2) where there is probable cause to believe that a motor vehicle contained contraband or evidence pertaining to a crime; *United States* v. *Ross,* 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982); *Arkansas* v. *Sanders,* 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979); *Coolidge* v. *New Hampshire,* supra, 455; *State* v. *Januszewski,* 182 Conn. 142, 152–54, 438 A.2d 679, cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1980); and (3) where the search has been conducted in order to "inventory" personal property lawfully taken into police custody. *Illinois* v. *Lafayette,* 462 U.S. 640, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983); *Michigan* v. *Thomas,* 458 U.S. 259, 102 S. Ct. 3079, 73 L. Ed. 2d 750 (1982); *South Dakota* v. *Opperman,* 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976); *State* v. *Gasparro,* 194 Conn. 96, 107, 480 A.2d 509 (1984), cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985). These exceptions "have been jealously and carefully drawn"; *Jones* v. *United States,* 357 U.S. 493, 499, 78 S. Ct. 1253, 2 L. Ed. 2d 1514 (1958); and the burden is on the state to establish the exception. *Coolidge* v. *New Hampshire,* supra, 455; *State* v. *Zindros,* supra, 237. We will separately address each of the exceptions to determine their applicability to the present case.

A

The principal basis on which the state supports the warrantless search of the automobile is that the search

was incident to the lawful custodial arrest of the defendant. In *Chimel* v. *California,* supra, the United States Supreme Court held that a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area, whether or not there is probable cause to search. The court recognized that searches incident to arrests have long been considered valid because of the need "to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape . . ." and the need to prevent the concealment or destruction of evidence. Id., 763. In *New York* v. *Belton,* supra, 461, the court applied this concept to an automobile search, holding that a lawful custodial arrest justifies a contemporaneous search of the entire passenger compartment of an automobile, whether or not the arrestee actually had control over the area.[8] In order to establish a straightforward rule for searches involving automobiles, the court applied *Chimel* in light of the generalization that "articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].' *Chimel* [v. *California,* supra]." *New York* v. *Belton,* supra, 460.

In *New York* v. *Belton,* supra, an automobile was stopped by a state policeman for traveling at an excessive rate of speed. The officer examined the automo-

---

[8] In *New York* v. *Belton,* 453 U.S. 454, 461–62, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), the court further reasoned that police may examine the contents of any containers found within the passenger compartment, "for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have."

bile registration and determined that none of the four occupants of the vehicle was related to the owner. The officer also smelled an odor of burnt marihuana and noticed an envelope on the floor of the vehicle that contained marihuana. He directed the men to get out of the vehicle and placed them under arrest for the unlawful possession of marihuana. After conducting a "pat-down" search of each of the men, he ordered them to remain in four separate areas of the highway so they would not be able to reach each other. The officer then searched the passenger compartment of the vehicle and found a jacket belonging to Belton. The officer unzipped one of its pockets and discovered cocaine. The United States Supreme Court concluded that the search which yielded the cocaine was proper as incident to the lawful arrest of the defendant.

Here the defendant does not claim that his arrest was invalid, as it was clearly made pursuant to outstanding arrest warrants, but claims that the search of the black bag was not incident to his arrest because he was no longer at the scene of the arrest at the time the bag was searched by officer Kiernan. We agree that the search was not incidental to the arrest.

The Supreme Court's decision in *Belton* articulated the scope of a search of an automobile incident to a lawful custodial arrest of its occupants. The court fashioned a rule, "easily applied, and predictably enforced"; *United States* v. *Robinson,* supra, 235; in order to provide clear guidance to police officers "who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." *New York* v. *Belton,* supra, 458, quoting *Dunaway* v. *New York,* 442 U.S. 200, 213–14, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979). *Belton* established this standard based upon a generalization that the interior of a car is always within the immediate control of an arrestee who has recently been in the car.

The state contends, therefore, that because the decision in *Belton* was an attempt to eliminate on the scene confusion of police officers with respect to the scope of their right to search an automobile, we should refrain from retrospectively evaluating the probability that the defendant could reach into the passenger compartment of the car. We agree with the state that the competing interests of law enforcement and personal privacy are better served if precise rules of police conduct are established which may be routinely followed in certain situations. Therefore we ordinarily will refuse to evaluate whether or not an individual arrested while in an automobile actually had access to the passenger compartment at the time of the search. We note that the search in *Belton* occurred after the four occupants of the automobile had been removed from the car, patted down, placed under arrest and separated on the highway so that none of them could actually have *reached* the jackets in the back seat of the car. Other courts have applied *Belton* in analogous situations where the arrestee seemingly had no opportunity to gain access to the passenger compartment of the automobile. *United States* v. *Cotton,* 751 F.2d 1146 (10th Cir. 1985) (*Belton* applicable even though defendant outside car and handcuffed); *Traylor* v. *State,* 458 A.2d 1170 (Del. 1983) (defendant in handcuffs); *State* v. *Valdes,* 423 So. 2d 944 (Fla. App. 1982) (defendant seated in police car); *State* v. *Hopkins,* 163 Ga. App. 141, 293 S. E.2d 529 (1982) (defendant seated in police car); see 2 Lafave, Search and Seizure (1986 Sup.) § 7.1, p. 224 n.46.12.

We refuse, however, to extend the "fiction" that the passenger compartment is *always* within reach of the arrestee; *New York* v. *Belton,* supra, 467 (Brennan, J., dissenting); to circumstances, as here, where the defendant is no longer at the scene of the arrest when the warrantless search was undertaken. It is undisputed

that in this case the defendant was strapped and hand-cuffed in the police cruiser leaving the scene when the heroin was discovered by officer Kiernan. Because *Belton* does no more than apply *Chimel* to a "particular and problematic" context, and "in no way alters the fundamental principles established in the *Chimel* case . . ."; id., 460 n.3; we hold that the right of a police officer to search the vehicle ceases the instant the arrestee departs the scene because the arrestee's removal forecloses any possibility that he could reach for an article within the vehicle. See *United States* v. *Chadwick,* 433 U.S. 1, 16, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977); *Preston* v. *United States,* 376 U.S. 364, 367, 84 S. Ct. 881, 11 L. Ed. 2d 777 (1964). Although *Belton* appears to have removed the necessity for factual analysis in each case of the actual likelihood that a person arrested may be able to obtain a weapon or destroy evidence contained in the passenger compartment of his vehicle, we construe it to allow a warrantless search of a vehicle incident to a lawful custodial arrest only while the arrestee remains at the scene of the arrest at the time the search is conducted. The warrantless search in this case was not constitutionally valid as incident to the arrest of the defendant.

## B

The second theory put forward by the state to justify the warrantless search of the automobile is that the police may make a warrantless search of an automobile in transit whenever they have probable cause to do so. The justification for this so-called "automobile exception" is twofold: (1) the inherent mobility of an automobile creates "exigent circumstances"; and (2) the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. *California* v. *Carney,* 471 U.S. 386, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985); *South Dakota* v. *Opperman,* supra, 367; *Chambers* v. *Maroney,* 399 U.S.

42, 90 S. Ct. 1975, 26 L. Ed. 2d 419, reh. denied, 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 94 (1970); *Carroll* v. *United States,* 267 U.S. 132, 153, 45 S. Ct. 280, 69 L. Ed. 543 (1925); *State* v. *Kolinsky,* 182 Conn. 533, 538, 438 A.2d 762 (1980), cert. denied, 451 U.S. 973, 101 S. Ct. 2054, 68 L. Ed. 2d 354 (1981). This exception to the warrant requirement demands that the officers have probable cause to believe that the vehicle contains contraband. *Carroll* v. *United States,* supra, 153–54. The probable cause determination must be based on objective facts that could have justified the issuance of a warrant by a neutral magistrate at the time the search was made. *United States* v. *Ross,* supra, 808.

This automobile exception to the warrant requirement applies only to searches of vehicles that are supported by probable cause. The absence of probable cause, despite the exigency created by the ready mobility of automobiles and the lesser expectation of privacy in them, will render any warrantless search unreasonable. *Chambers* v. *Maroney,* supra, 51; *State* v. *Federici,* 179 Conn. 46, 53–54, 425 A.2d 916 (1979). " 'Probable cause to search exists if (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . *and* (2) there is probable cause to to believe that the items sought to be seized will be found in the place to be searched.' (Emphasis in original; citations omitted.) *State* v. *DeChamplain,* [179 Conn. 522, 528–29, 427 A.2d 1338 (1980)]." *State* v. *Delmonaco,* 194 Conn. 331, 337, 481 A.2d 40, cert. denied, 469 U.S. 1036, 105 S. Ct. 511, 83 L. Ed. 2d 401 (1984).

The state claims that there was probable cause to search the defendant's vehicle for dangerous weapons. We disagree. The factual information available to the state at the time the officers conducted the search of

the Cadillac was inadequate to establish probable cause that weapons would be found in the vehicle. The officers were aware of the following facts prior to their search of the automobile for evidence: the vehicle had been stopped for speeding; there were outstanding arrest warrants for weapons charges; the defendant had been observed making "a lot of unusual movements" in the car; and they were informed by the police dispatcher, the basis for his assertion being the reported belief of the Bridgeport police department, that the defendant might have shotguns in his car. Although a police officer is certainly entitled to utilize his training and experience in ascertaining probable cause; see *Texas* v. *Brown,* 460 U.S. 730, 743–44, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1984); we cannot conclude that these factors alone are sufficient to "warrant a man of reasonable caution in the belief" that weapons would be found in the car. *Carroll* v. *United States,* supra, 162; see *State* v. *Schoenbneelt,* 171 Conn. 119, 123, 368 A.2d 117 (1976).[9] Clearly, the defendant's citation for speeding has little bearing on the probable cause determination. The existence of arrest warrants, albeit on weapons charges, does not indicate probable cause to search for weapons because these warrants alone provide no reasonable basis for the officers to conclude that weapons would be found in the vehicle. The suspicion of the Bridgeport police that the defendant might have weapons in the vehicle does not amount to probable cause. Finally, the fact that the defendant was making furtive movements could very well be explained by his anxiety over being stopped and could not reason-

[9] The state also argued that officer Kiernan had probable cause to search the black bag for handguns. The officers did not testify that the black bag had any "distinctive character" that raised any reasonable suspicion that there were weapons within it. *Texas* v. *Brown,* 460 U.S. 730, 744, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1984). In fact, trooper Kiernan testified that he "didn't believe that" the bag contained a firearm.

ably have allowed the officers to conclude that there were weapons in the car. The officers did not have probable cause to search the vehicle.

## C

The state also contends that the warrantless search and seizure of the contents of the black bag were constitutionally permissible in order to inventory the contents of the vehicle. We summarily reject this contention. In *South Dakota* v. *Opperman,* supra, the United States Supreme Court held that a warrant was not necessary where the purpose of the search was to inventory the contents of an impounded vehicle. When "vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobile's contents." Id., 369. The court concluded that "inventories pursuant to standard police procedures are reasonable," and that evidence obtained as a result of a valid procedure is admissible against the defendant if the inventory "process is aimed at securing or protecting the car and its contents." Id., 373.

Although we have recognized the validity of departmentally authorized inventory searches; *State* v. *Gasparro,* supra, 108; the state, as is its burden, did not offer evidence of any police department practice for inventory searches to be conducted on the highway by field officers. Further, it is clear that the officers' purpose in searching the vehicle at the scene was to investigate and not to inventory the contents. The fact that no lists of property were made and that the officers discontinued their search immediately after discovering the contraband indicates that the search was not undertaken to inventory the contents of the vehicle. See *State* v. *Johnson,* 183 Conn. 148, 438 A.2d 851 (1981); *State* v. *Murphy,* 6 Conn. App. 394, 401 n.8, 505 A.2d 1251 (1986). In fact, the officers did not tes-

tify that the purpose of their search was to conduct an inventory. The search cannot be constitutionally validated under the "inventory search" exception to the warrant requirement.

## III

Our conclusion that the warrantless search of the vehicle did not fall within an established exception to the warrant requirement does not require us to exclude the evidence unlawfully seized from the vehicle the defendant was driving. Under the exclusionary rule, the illegally seized heroin would be inadmissible at trial unless one of the exceptions to the rule applied. *Wong Sun* v. *United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Although the argument was not raised by the state on appeal,[10] evidence illegally seized can be properly admitted under the "inevitable discov-

---

[10] The subject of the applicability of the "inevitable discovery" exception to the exclusionary rule, though briefed by neither party, was raised at oral argument upon inquiry by the court referring specifically to *Nix* v. *Williams,* 467 U.S. 431, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). Just as this court may "in the interests of justice notice plain error not brought to the attention of the trial court"; Practice Book § 3063; this court may also consider grounds for affirming a judgment that may have been overlooked by counsel in an appeal to this court. "But where we do this it is not because the [party] has a right to have the question determined, but because, in the interest of the public welfare or of justice between individuals, we are of the opinion that it ought to be done." *Rindge* v. *Holbrook,* 111 Conn. 72, 75, 149 A. 231 (1930). "[T]his court is not limited in its disposition of a case to claims raised by the parties and has frequently acted sua sponte upon grounds of which the parties were not previously apprised." *Greenwood* v. *Greenwood,* 191 Conn. 309, 315, 464 A.2d 771 (1983). Where there is good reason, the court has ordered additional argument or briefing upon issues first raised sua sponte during oral argument. See *State* v. *Curcio,* 191 Conn. 27, 29, 463 A.2d 566 (1983); *State* v. *Powell,* 186 Conn. 547, 550, 442 A.2d 939, cert. denied, 459 U.S. 838, 103 S. Ct. 85, 44 L. Ed. 2d 80 (1982). Since we have concluded, however, that there must be further proceedings in the trial court to determine the applicability of the inevitable discovery rule under the circumstances of this case, the defendant will have a full opportunity to present in the trial court or in any subsequent appeal any claim, legal or factual, that the rule should not be followed in this case.

ery" exception to the exclusionary rule, recently adopted by the United States Supreme Court in *Nix* v. *Williams,* 467 U.S. 431, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984). See *United States* v. *Apker,* 705 F.2d 293, 306–307 (8th Cir. 1983); *United States* v. *Fisher,* 700 F.2d 780 (2d Cir. 1983); *United States* v. *Brookins,* 614 F.2d 1037 (5th Cir. 1980); *Wayne* v. *United States,* 318 F.2d 205 (D.C. Cir.), cert. denied, 375 U.S. 860, 84 S. Ct. 125, 11 L. Ed. 2d 86 (1963). "[T]he 'vast majority' of all courts, both state and federal, recognize an inevitable discovery exception to the Exclusionary Rule." Id., 441.

Under the inevitable discovery rule, evidence illegally secured in violation of the defendant's constitutional rights need not be suppressed if the state demonstrates by a preponderance of the evidence that the evidence would have been ultimately discovered by lawful means. Id., 444. To qualify for admissibility the state must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued *prior* to the occurrence of the constitutional violation. *United States* v. *Cherry,* 759 F.2d 1196, 1205 (5th Cir. 1985); *United States* v. *Satterfield,* 743 F.2d 827, 846 (11th Cir. 1985). In *Nix* v. *Williams,* supra, 443, the United States Supreme Court observed that the operation of the exclusionary rule in situations where the police would have inevitably discovered the evidence by legal means already initiated would put the state in a worse position than it would have been in if no police misconduct had transpired. "Fairness can be assured by placing the State and the accused in the same positions they would have been in had the impermissible conduct not taken place." Id., 447.

In light of *Nix* v. *Williams,* we remand the case to the trial court to determine whether the inevitable discovery doctrine is applicable under the circum-

stances of this case. See *New York* v. *Class,* 475 U.S. 106, 119n., 106 S. Ct. 960, 89 L. Ed. 2d 81 (1986). Of some significance in this regard was the testimony of officer Naples that, without informing his fellow officer, he had summoned a police wrecker to the scene in order to tow the defendant's vehicle back to headquarters. Among the factors to be considered are: (1) whether an inventory search would have been justified under the circumstances; (2) whether such a search would have been conducted according to standard state police operating procedures; and (3) whether a search pursuant to these procedures would have uncovered the heroin in the black bag. See *South Dakota* v. *Opperman,* supra; *State* v. *Gasparro,* supra.

We remand the case for further proceedings in accordance with this opinion.

In this opinion SANTANIELLO and CALLAHAN, Js., concurred.

PETERS, C. J., with whom HEALEY, J., joins, dissenting. With regret, I find myself in disagreement with the court's disposition of the issues raised by the defendant's conditional plea of nolo contendere. Because I believe that the trial court's canvass of the defendant's plea does not pass constitutional muster, I respectfully dissent.

The focus of my dissent from the majority opinion is a narrow one. We are all in agreement that, in this direct appeal from his conviction in accordance with his plea of nolo contendere, the defendant may challenge the constitutional implications of his plea canvass, even though he failed to raise such a claim of error in the trial court. *State* v. *Amarillo,* 198 Conn. 285, 313 n.16, 503 A.2d 146 (1986); *State* v. *Childree,* 189 Conn. 114, 119, 454 A.2d 1274 (1983); *State* v. *Godek,* 182 Conn. 353, 356, 438 A.2d 114 (1980), cert. denied,

450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). We are equally in agreement that the constitutional determinants of a valid plea of nolo contendere require a showing, on the record, of a knowing and intelligent waiver of the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers. *Boykin* v. *Alabama,* 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State* v. *Lopez,* 197 Conn. 337, 341–42, 497 A.2d 390 (1985); *State* v. *Childree,* supra, 119–20; *Blue* v. *Robinson,* 173 Conn. 360, 373, 377 A.2d 1108 (1977). Finally, we are all in agreement that the record adequately demonstrates a waiver of the privilege against self-incrimination and of the right of confrontation. What divides us, therefore, is solely the question of whether the record affirmatively discloses that the defendant waived his right to a trial by jury. In my view, there is no such showing, and the defendant's plea of nolo contendere accordingly should be set aside.

There is no dispute about what the record reveals with respect to this question. On the day of the canvass concerning the defendant's conditional plea of nolo contendere, the trial court asked the defendant, "You are not admitting any participation in the crime?" to which the defendant replied, "No, sir." Thereafter the court asked, "However you do realize that at this time you are giving up your right to a trial at this present time?" The defendant answered, "Yes, sir." The court then inquired into the defendant's waiver of his other constitutional rights and assured itself that the defendant's plea was not the result of threats or promises. This inquiry was followed by a recitation of the facts of the offense and by advice to the defendant of the maximum penalty that he might receive. There was no further effort to explore the constitutional validity of the defendant's plea except that the court, at the end

of the canvass, asked both counsel to indicate whether they knew of any reason why the plea should not be accepted, and they responded in the negative. This record concededly contains not one word referring to the waiver of a *jury* trial, nor is there any statement, on the record, that the defendant had consulted with his counsel about the constitutional implications of a plea of nolo contendere.

The record as a whole contains the following additional information. The defendant, at the time of his initial plea of not guilty, had elected a jury trial. No jury was, however, empaneled to hear his case because the defendant entered his conditional plea of nolo contendere on a substitute information immediately upon the conclusion of a pretrial evidentiary hearing on his unsuccessful motion to suppress evidence found in his car.

Contrary to the view of the majority, I do not believe that this record demonstrates a knowing waiver of the defendant's constitutional right to a trial by jury. We do not know what the defendant was advised, and by whom, at the time of his original arraignment. More important, whatever he was then advised would not suffice to meet the constitutional requirement that the record must demonstrate a knowing waiver of constitutional rights *at the time* of a plea of guilty or nolo contendere.

There can be no question that *Boykin* v. *Alabama,* supra, and our case law require an affirmative showing that a plea of guilty or of nolo contendere represents an intelligent and voluntary waiver of a defendant's constitutional rights. Because such a plea is the functional equivalent of a conviction, because what is at stake for a defendant is often a long term of imprisonment, our courts have been enjoined to act with the utmost solicitude for the rights of the defendant in

conducting a canvass to assure the defendant's full understanding of what his plea connotes and of its consequences. *Boykin* v. *Alabama,* supra, 243–44; *State* v. *Childree,* supra, 120. In imposing the obligation to undertake such a canvass in open court, and to make an affirmative record, this case law indisputably demands a waiver of constitutional rights that is contemporaneous with the court's acceptance of a plea. The waiver must occur in the plea proceeding itself. I do not understand the majority opinion to be in disagreement with this principle.

In its application of *Boykin* principles to this case, the majority opinion concludes that informing a defendant of a *right to a trial* is the constitutional equivalent of advice concerning his *right to a jury trial.* In order to reach this conclusion, the opinion relies on two factors: (1) the defendant's recollection that, ten months earlier, a different judge had advised him of his right to a jury trial on different charges and that he had then exercised that right; and (2) defense counsel's withdrawal of the defendant's earlier election of a jury trial upon the defendant's agreement to plead nolo contendere to the lesser charge of which he now stands convicted. Neither singly nor jointly do these factors serve to demonstrate the defendant's knowing and intelligent waiver of his right to a jury trial.

I know of no Connecticut case, and the majority cites none, in which pre-plea proceedings have been relied upon to supply an affirmative record of constitutional waiver at the time of a plea canvass for a plea of guilty or of nolo contendere. Those of us who are attorneys may reasonably be held to understand and to recall earlier pleadings and their subsequent consequences. We should not, however, engage in speculation about what a lay defendant may or may not presume about his constitutional rights. For all we know, this defendant may well have been in doubt about the availability

of a jury trial for lesser charges, if indeed he remembered his earlier election at all. It is precisely to avoid such speculation about a defendant's knowing and intelligent decision to forego his constitutional rights that we require waiver to be affirmatively manifested on the record.

The action of defense counsel in withdrawing the claim for a jury trial is similarly insufficient to establish the defendant's own understanding of his constitutional rights at the time of his plea. It is quite possible that the withdrawal only confirmed the defendant's misimpression that a jury trial was no longer warranted for the substitute charge to which he was now pleading. In the absence of any showing on the record that defense counsel explained the constitutional significance of this withdrawal to the defendant, counsel's conduct does not demonstrate waiver by the defendant.

The process of plea bargaining has often been criticized as undermining essential attributes of the criminal justice system. In rejecting an attack on plea bargaining as an allegedly improper infringement of a defendant's constitutional rights, we have concluded that a plea bargain that results from an intelligent and voluntary plea of guilty is "both desirable and constitutional." *State* v. *Lopez,* supra, 350; see also *Corbitt* v. *New Jersey,* 439 U.S. 212, 219, 99 S. Ct. 492, 58 L. Ed. 2d 466 (1978); *Bordenkircher* v. *Hayes,* 434 U.S. 357, 361–62, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978); *Santobello* v. *New York,* 404 U.S. 257, 260–61, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971); *Staton* v. *Warden,* 175 Conn. 328, 331–33, 398 A.2d 1176 (1978); Wright, "Plea Bargaining—A Necessary Tool," 16 Conn. L. Rev. 1015 (1984). In *State* v. *Lopez,* supra, 350–51, we expressly held that plea bargaining is constitutional, despite the constitutional guarantee of the right to demand a trial by jury. We premised our decision, however, on a record which affirmatively demonstrated a

knowing and voluntary waiver of the right to a jury trial at the time of the plea canvass. We determined that "[p]rior to accepting the defendant's plea, the court specifically informed him that in pleading guilty he was waiving his right to a jury trial . . . . The defendant indicated that he realized he was waiving his right to be tried by offering to plead guilty, and nevertheless proceeded to enter a guilty plea." Id., 351. The record in this case is a far cry from that which we found essential in *Lopez*.

We should not provide further ammunition to the critics of plea bargaining by countenancing a plea canvass that relies on speculation and supposition to establish the needed record of punctilious compliance with constitutional requirements. "[T]he constitutional rights of a criminal defendant in taking either a guilty or a nolo plea must be scrupulously protected." *State v. Godek*, supra, 360. In *Godek*, we adopted a standard of substantial compliance for the adjudication of alleged deviations from statutory or Practice Book rules for the taking of a plea, but in announcing that standard we expressly excluded from its ambit possible infringements of a defendant's constitutionally protected rights. Id. With respect to constitutional rights, we have always, until today, followed the rule that a trial judge should not accept a plea of guilty or of nolo contendere unless the defendant is specifically informed of each and every element of his *Boykin* v. *Alabama* rights. *State* v. *James,* 197 Conn. 358, 362, 497 A.2d 402 (1985); *State* v. *Lopez,* supra, 342; *State* v. *Bugbee,* 161 Conn. 531, 536, 290 A.2d 332 (1971); see also *United States* v. *Journet,* 544 F.2d 633, 636 (2d Cir. 1976); *In re Tahl,* 1 Cal. 3d 122, 132, 460 P.2d 449, 81 Cal. Rptr. 577 (1969), cert. denied, 398 U.S. 911, 90 S. Ct. 1708, 26 L. Ed. 2d 72 (1970); *Purvis* v. *Connell,* 227 Ga. 764, 766–68, 182 S.E.2d 892 (1971); *State* v. *Abodeely,* 179 N.W.2d 347, 352 (Iowa 1970), cert.

denied and appeal dismissed, 402 U.S. 936, 91 S. Ct. 1617, 29 L. Ed. 2d 104 (1971); *People* v. *Jaworski,* 387 Mich. 21, 30, 194 N.W.2d 868 (1972); *Commonwealth ex rel. West* v. *Rundle,* 428 Pa. 102, 105–106, 237 A.2d 196 (1968); *State* v. *Mackey,* 553 S.W.2d 337, 340–42 (Tenn. 1977); III American Bar Association, Standards for Criminal Justice (1980) Standard 14-1.4; Spinella, Connecticut Criminal Procedure (1985) pp. 459–66, esp. pp. 462–63. I cannot agree with the majority opinion's decision to depart from this salutary rule.

Accordingly, I dissent.