STATE OF CONNECTICUT *v.* ANTHONY CARTER
(SC 15593)

Borden, Berdon, Katz, Palmer and McDonald, Js.

Argued October 3—officially released December 16, 1997

*Denise B. Smoker*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, *Christopher L. Morano*, supervisory assistant state's attorney, and *Judith Rossi*, assistant state's attorney, for the appellant (state).

*Mark Rademacher*, assistant public defender, for the appellee (defendant).

*Opinion*

MCDONALD, J. The sole issue in this appeal is whether the Appellate Court correctly determined that the defendant, Anthony Carter, did not knowingly and

voluntarily waive his right against self-incrimination when he entered guilty pleas. The state appeals, upon the granting of certification,[1] from the Appellate Court's judgment that the trial court inadequately canvassed the defendant before accepting his guilty pleas. *State* v. *Carter*, 43 Conn. App. 555, 685 A.2d 1129 (1996). We reverse the judgment of the Appellate Court.

The state filed an information against the defendant, charging him with three counts of the sale of narcotics in violation of General Statutes § 21a-277 (a), three counts of conspiracy to sell narcotics in violation of General Statutes §§ 53a-48 and 21a-278 (b) and three counts of the sale of narcotics within 1500 feet of a housing project in violation of General Statutes § 21a-278a (b). The information also charged the defendant with violating the Corrupt Organizations and Racketeering Activity Act (CORA) in violation of General Statutes § 53-395 (b) and (c) and conspiracy to violate CORA in violation of General Statutes §§ 53a-48 and 53-395 (b) and (c).

Subsequently, the defendant withdrew his initial pleas of not guilty as to all counts of the information and entered pleas of guilty as to the two CORA counts and the three sale of narcotics counts.[2] His counsel was

[1] This court granted the state's petition for certification to appeal limited to the following issue: "Whether the Appellate Court, under the circumstances of this case, improperly concluded that the defendant's guilty pleas were not entered knowingly and voluntarily?" *State* v. *Carter*, 239 Conn. 958, 688 A.2d 328 (1997).

[2] General Statutes § 53-395 provides in relevant part: "(b) It is unlawful for any person, through a pattern of racketeering activity or through the collection of an unlawful debt, to receive anything of value or to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.

"(c) It is unlawful for any person employed by, or associated with, any enterprise to knowingly conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity or through the collection of an unlawful debt. . . ."

General Statutes § 53a-48 provides: "(a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees

present and participated in the entering of his guilty pleas. The state nolled the remaining charges.

At the time of the entry of the guilty pleas, the state agreed on the record to recommend that "the defendant receive a sentence of sixteen years [incarceration], with the right to argue for a lesser period of incarceration, but in no event [should he] receive a sentence of less than eight years. After a recitation of the factual predicate for the pleas and the state's placing the plea agreement on the record, the trial court proceeded to canvass the defendant to determine whether the pleas of guilty were [knowingly] intelligently and voluntarily made.

"During the canvass, the defendant admitted that he had made three sales of heroin to undercover officers, that he had acted as lookout for fellow purveyors of narcotics and that he had attempted to flag down vehicles to sell narcotics. At the end of the canvass, the trial court found that the pleas were entered voluntarily, that the defendant understood the crimes charged, that,

with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

"(b) It shall be a defense to a charge of conspiracy that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

General Statutes § 21a-277 provides in relevant part: "(a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned. . . ."

by his own concession, he had received effective assistance of counsel, and that he admitted the factual basis of each charge against him. Accordingly, the trial court accepted the pleas of guilty and made findings of guilty . . . ." *State* v. *Carter*, supra, 43 Conn. App. 557. When the defendant later appeared for sentencing the trial court imposed a total effective sentence of twelve years. Id., 558.

The defendant did not move to withdraw his pleas, nor did he file any postsentence motions in the trial court. On appeal to the Appellate Court, the defendant raised for the first time his claim that his canvass by the trial court was constitutionally defective.

The Appellate Court reversed the trial court's judgment, ruling that the trial court failed to include in its canvass a sufficient warning that the defendant's pleas of guilty operated as a waiver of his constitutional right against self-incrimination. It concluded that the trial court had failed to inform the defendant that he had a right to persist in his plea of not guilty. Id., 562. The defendant's remaining claim on appeal, that his right to due process was violated by the trial court during his sentencing hearing, was not addressed by the Appellate Court.

The defendant raises before us a federal constitutional defect in his plea canvass under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

*Golding* established a four part test. "In order to prevail on appeal on a constitutional claim, that has not been adequately preserved at trial, the defendant must meet all of the following conditions: '(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless

error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.' " *State* v. *Pinnock*, 220 Conn. 765, 778, 601 A.2d 521 (1992), quoting *State* v. *Golding*, supra, 213 Conn. 239–40. "We have also held that we remain free to dispose of the claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Pinnock*, supra, 778. We conclude on the basis of this record that a constitutional violation did not clearly exist and did not clearly deprive the defendant of a fair trial.

The United States Supreme Court has held that for the acceptance of a guilty plea to comport with due process, the plea must be voluntarily and knowingly entered. *Boykin* v. *Alabama*, 395 U.S. 238, 243–44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). *Boykin* set forth three federal constitutional rights of which a defendant must be cognizant prior to entering a guilty plea: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's own accusers. Id., 243. Since a guilty plea constitutes a waiver of these constitutional rights, a reviewing court cannot presume from a silent record that a defendant knowingly waived these three rights. *State* v. *Badgett*, 200 Conn. 412, 419–20, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

During the plea canvass, a court is required to inform a defendant of his right against compulsory self-incrimination and to inform him that he waives that right by pleading guilty. "Under *Boykin*, in order for a plea to be knowingly, voluntarily and intelligently made, a trial court is required to advise a defendant that his plea operates as a waiver of three fundamental constitutional rights—jury trial, confrontation and self-incrimination." *State* v. *Badgett*, supra, 200 Conn. 418. In

connection with the waiver of the defendant's right against self-incrimination, "the federal constitution requires only that a defendant, at the time of the entry of a plea of guilty or nolo contendere, be informed by the court that . . . he could not be compelled to enter that plea." *State* v. *Nelson*, 221 Conn. 635, 640–41, 605 A.2d 1381 (1992).

The "substance" of the right against compulsory self-incrimination must be "sufficiently conveyed" by the canvassing court before a guilty plea may be accepted. *State* v. *Badgett*, supra, 200 Conn. 420. Specific words are not required to inform the defendant of his right against compulsory self-incrimination. Id. ("[l]iteral compliance, however, [with *Boykin*] is *not* constitutionally required" [emphasis in original]). Rather, our focus is directed at "all of the relevant circumstances" surrounding the canvass. *State* v. *Domian*, 235 Conn. 679, 687, 668 A.2d 1333 (1996). "[F]or protection of his privilege against self-incrimination, the federal constitution mandates only that a defendant be apprised of the fact that he does not have to enter a plea of guilty or nolo contendere and thus incriminate himself." *State* v. *Nelson*, supra, 221 Conn. 642. The right against compulsory self-incrimination is therefore adequately conveyed when a defendant knows that he need not enter the plea of guilty and knows the effect of that plea.

In this case, the Appellate Court concluded that the plea canvass was insufficient because the trial court never apprised the defendant that he did not have to plead guilty. The defendant was told, however, that the purpose of the canvass was "to make sure that you're giving these pleas—all five pleas that you have just rendered to the court, voluntarily and of your own free will. If you have any questions at any particular period of time, please do not hesitate to ask me." The defendant later replied, in answer to a question, that he was entering all five pleas voluntarily and of his own free will.

He denied that anyone was forcing him to enter those pleas. The court then asked the defendant, "And you understand that you could have gone to trial on each and every one of these counts? Mr. Schoenhorn, your attorney, could have represented you before a judge or jury." The court advised the defendant of his right to go to trial, with the assistance of counsel, before either a judge or a jury, during which trial the state would be required to prove its case beyond a reasonable doubt. The court further informed the defendant of his rights to put on evidence at trial; to refrain, with counsel's advice, from testifying; to subpoena witnesses; and to cross-examine witnesses. Thereafter, the court asked the defendant, "[A]nd basically, because you're pleading here voluntarily before this Court today, do you understand that you're waiving your ability to have a trial on each and every one of these counts here this afternoon?" The defendant answered, "yes."

The transcript shows that the defendant knew that he had an alternative to pleading guilty and that this alternative permitted him to challenge the state's factual allegations and legal theories. Defense counsel, after describing in detail two such legal theories, indicated that the defendant waived them. The court then stated, "And you've discussed that with Mr. Carter, and he understands that you're waiving those particular issues that you addressed to the Court; is that accurate? Is that true, Mr. Carter?" The defendant responded, "yes."

The defendant also knew that, had he chosen to go to trial, he could have taken the stand on his own behalf but need not have done so. The court stated, "If you so desired, you could have taken the stand on your own behalf, if that was your choice. And basically, because you're pleading here voluntarily before this Court today, do you understand that you're waiving your ability to have a trial on each and every one of these counts here this afternoon?" The defendant responded, "yes."

The transcript also shows that the defendant knew that his waiver of a trial and entry of guilty pleas meant that he was admitting the underlying facts and thereby incriminating himself. When the trial court, for the second time, asked the defendant if he understood that he waived all of his constitutional privileges before the court, he replied, "yes." Then, when asked if he had any questions of the court, the defendant stated that he did not want to be labeled as a member of a gang. He denied, supplemented by his counsel's remarks, that he was a member of the Twenty Love gang, although he admitted that his association with it supported the conspiracy charge. The defendant's ability to realize that a guilty plea incriminated him, in conjunction with the court's explanation of his right to trial, shows the voluntary and knowing nature of his guilty pleas.

Although the words "voluntary waiver of the right against self-incrimination" were not used, the defendant knew that he was giving up the right to a trial, and he stated that he was doing so voluntarily and of his own free will. Although the plea canvass here was not couched in direct language that the defendant had a right to persist in his pleas of not guilty and have a trial, it is clear from the transcript that the defendant understood his waiver of that trial was brought about only by his voluntary pleas of guilty, made of his own free will and without pressure from anyone else. In *State* v. *Suggs*, 194 Conn. 223, 228, 478 A.2d 1008 (1984), this court upheld a conviction based on a guilty plea where the defendant knew "he could plead not guilty and undergo a trial," despite the fact that during the plea canvass the trial court failed to inform the defendant, as required by Practice Book § 711 (5), that he had a right to continue in his plea of not guilty.

We conclude that the defendant's knowledge that his voluntary, freely given pleas of guilty were a waiver of

his right to trial meets the constitutional requirements of a guilty plea.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the defendant's remaining claim on appeal.

In this opinion the other justices concurred.