[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
Defendant's Motion to Suppress Evidence dated June 25, 1996 and Defendant's Motion to Suppress Statement dated July 10, 1996
INTRODUCTION
Rene DeJesus ("defendant") was arrested by members of the Waterbury Police Department without a warrant on September 19, 1995, for the sale of heroin. On February 16, 1996, while this case was pending, the defendant gave a written statement under oath to Detective Gary Pelosi while in the offices of the vice and intelligence division of the Waterbury police department. This statement was given one day after the defendant's brother, Anthony DeJesus, was killed in Waterbury. Now, Rene DeJesus moves to suppress the written statement on the grounds that it was not knowingly and voluntarily given and was also given without the assistance of counsel. Additionally, the defendant moves to suppress $52 seized from his person at the time of the warrantless arrest. DeJesus claims that the police, in taking the statement and seizing the money, violated his protections under both the state and federal constitutions.
The court convened an evidentiary hearing concerning these motions on July 11, 1996 and July 12, 1996. Detective Pelosi testified at these proceedings, along with Detective DeMatteis, Detective Sergeant Pietri and Detective Canale. DeMatteis, Pietri and Canale were involved in arresting the defendant in September of 1995. The defendant offered no evidence.
Both of the motions to suppress are DENIED.
FINDINGS OF FACT
On September 19, 1995, Detective DeMatteis was conducting a surveillance of South Main Street and Jewelry Street, a high volume narcotics trafficking section of the city of Waterbury. At that time, he observed Shane Cleary, a person known to DeMatteis to be a drug user, exit from the passenger side of an automobile. CT Page 5118-JJJ DeMatteis observed Cleary approach the defendant, Rene DeJesus, whom DeMatteis knew at the time from prior narcotics investigations. DeMatteis saw Cleary give money to the defendant for something and concluded from his training and experience that an illegal drug sale had taken place. The detective watched Cleary return to the passenger side of the automobile and depart. DeMatteis then radioed Detective Sergeant Pietri and his partner, Detective Deeley, to stop this automobile since he (DeMatteis) believed that Cleary had just purchased narcotics from the defendant. When the officers effected the stop, they saw Cleary drop a package of narcotics, which subsequently field tested for heroin. The officers arrested Cleary for possession of narcotics and then informed DeMatteis by radio of the circumstances of the arrest. DeMatteis, who was still maintaining the surveillance, radioed a description of the defendant to Detective Tracy Canale for the arrest of DeJesus for the sale of narcotics. When Canale arrived at South Main and Liberty Street, where the defendant was then standing, Detective DeMatteis from his surveillance location directed Canale by radio to the defendant for purposes of placing him under arrest.
On February 15, 1996, five months after the defendant's arrest for the sale of heroin, Rene DeJesus' brother, Anthony, was shot and killed in the city of Waterbury. Detective Gary Pelosi was assigned to investigate that homicide. On February 16, 1996, one day after the killing, Pelosi met the defendant in the offices of the Waterbury police department's vice and intelligence division for the purpose of taking a statement from him pertaining to the killing of his brother. Pelosi did not know how the defendant arrived at the station, nor had any officer informed Pelosi that Rene DeJesus was under arrest or being held. The defendant was desirous of being cooperative with the police to help them apprehend the persons associated with the killing of his brother. Pelosi advised DeJesus of his constitutional rights and proceeded to take the written statement, in which he named the persons for whom his late brother was selling drugs and the persons he thought responsible for the brother's death. In the course of this statement, however, the defendant made some inculpatory remarks concerning his September 1995 arrest for the sale of heroin. See State's Ex. 2 a and b. (See Appendix A). Prior to giving the statement, the defendant was advised of his constitutional rights by Detective Pelosi and the defendant indicated that he understood these rights. DeJesus stated that he wished to give a statement. When this written statement was completed, DeJesus signed it and swore to its truthfulness. It CT Page 5118-KKK took approximately one hour for the statement to be given. Although the defendant understood the English language, Officer Juan Rivera read the statement back to the defendant in Spanish. When the statement was completed, Rene DeJesus walked out of the offices of the vice and intelligence division.
CONCLUSIONS OF LAW
1. The state has proven by a preponderance of the evidence that the Waterbury police officers on September 19, 1995 had probable cause to arrest without a warrant Rene DeJesus for the sale of heroin. Additionally, the state has proven the legal validity of the search of the defendant's person incident to that arrest and the seizure of the $52 as evidence. State v. Trine, 236 Conn. 216,235-42, 673 A.2d 1098 (1996); State v. Badgett, 200 Conn. 412,424, 512 A.2d 160 (1986); State v. Santos, Superior Court, judicial district of Hartford-New Britain at Enfield G.A. 13, Docket No. 94-93440 (September 1, 1994).
2. Concerning the inculpatory statements made by Rene DeJesus to Detective Pelosi on February 16, 1996, the state has proved by a preponderance of the evidence that when the statements were made and reduced to writing, the defendant was warned of his constitutional rights, that he understood those rights and freely waived those protections. State v. James, 237 Conn. 390, 425-26, ___ A.2d ___ (1996). This court further concludes that the defendant was desirous of cooperating with the police and particularly, Detective Pelosi, regarding the apprehension of those persons responsible for Anthony DeJesus' death. All of the defendant's statements to Pelosi were made both knowingly and voluntarily. Additionally, this court concludes that the defendant has failed to meet his burden to prove that he was in custody when the statements were made. State v. Rasmussen,225 Conn. 55, 76-77, 621 A.2d 728 (1993).
CONCLUSIONS
The defendant's two motions to suppress are denied and orders may enter accordingly.[1]
William Patrick Murray a judge of the Superior Court CT Page 5118-LLL
 APPENDIX A
STATE'S EXHIBIT 2A VOLUNTARY STATEMENT
DATE FEBRUARY 16, 1996 PLACE WATERBURY DETECTIVE BUREAU
Time Statement Started 11:00 A.M. ______________ P.M.
I, the undersigned, RENE DEJESUS of WATERBURY
___________________, being 27 years of age, born at PUERTO RICO,
__________________________, on 8/21/68, do hereby make the
following statement to DETECTIVE GARY PELOSI identified himself
as a WATERBURY POLICE DETECTIVE
I have been advised and know that I have the right to remain
silent. (RDJ) I have been advised and know that anything I say
can be and will be used against me in a court of law. I have been
advised and know that I have a right to an attorney and I know
that the attorney can be with me while I am being questioned by
the police. (RDJ) I have also been advised and know that I can
have an attorney if I cannot afford one and that this attorney
can be with me while I am questioned by the police.(RDJ) I know
and I have been advised that I can refuse to answer any questions
put to me by the police officer whenever I desire. I am willing
to give this statement knowing all of the above facts and I do so
freely and voluntarily without any threats or promises and I do
not wish the presence of an attorney when I give this
statement.(RDJ)
MY NAME IS RENE DEJESUS AND I AM GIVING THIS STATEMENT TO DET.
PELOSI AFTER I HAVE TOLD MY RIGHTS WHICH I UNDERSTAND AND WISH TO
GIVE THIS STATEMENT. MY NICKNAME ON THE STREET IS "LOCO RIC" AND
PEOPLE OFTEN CALL ME THAT ON THE STREET. LAST NIGHT MY BROTHER
ANTHONY DEJESUS WAS SHOT AND KILLED EXECUTION STYLE ON EAST CLAY
ST. MY BROTHERS NICKNAME IS "DAJOHN". MY BROTHER HAD BEEN SELLING
HEROIN IN THE SOUTH END OF WATERBURY FOR ABOUT 4-5 MONTHS AND
ALSO PEOPLE WOULD BEEP HIM AND HE WOULD DELIVER TO DIFFERENT
PEOPLE. I ALSO KNOW THAT MY BROTHER WOULD SELL HEROIN FOR "TIN"
CONDE AND I GUY THAT I KNOW AS GORDO. BOTH TIN AND GORDO WORK
WITH EACH OTHER. I MYSELF HAVE ALSO SOLD HEROIN FOR TIN CONDE. I
HAVE WORKED FOR TIN FOR ABOUT 3 MONTHS IN THE PAST. TIN CONDE
WOULD SELL ME 5 BUNDLES OF HEROIN FOR $500.00 AND IN THE END I
WOULD MAKE A PROFIT OF $500.00. ALTOGETHER I HAVE KNOWN TIN CONDE
FOR ABOUT 7 YEARS. LAST SEPTEMBER I GOT BUSTED BY THE COPS FOR
CT Page 5118-MMM
SELLING HEROIN. ACTUALLY AT THE TIME I WAS SELLING HEROIN FOR
TIN. WHEN I GOT BUSTED MY BROTHER DAJOHN COSIGNED MY BOND TO GET
ME OUT OF JAIL BUT IT WAS ACTUALLY TIN WHO PUT UP THE MONEY TO
GET ME OUT OF JAIL. MY BOND AT THE TIME WAS LARGE $50,000.00.
AFTER I GOT BUSTED I STOPPED SELLING FOR TIN BECAUSE I WAS GOING
TO COURT FOR MY CASE. RIGHT AT THAT TIME MY BROTHER DAJOHN
STARTED SELLING HEROIN FOR TIN. DAJOHN WAS SELLING FOR TIN I
WOULD SAY FOR UP TO LAST MONTH WHEN HE STOPPED SELLING FOR TIN.
LAST MONTH I WAS TALKING TO MY BROTHER (RDJ)
I have read this statement consisting 3 pages.
The facts therein contained are true and correct and I have given
the above statement of my own free will after my constitutional
right have been explained to me.
 Signed Rene DeJesus
 Signature of Person giving voluntary statement
 Sworn And Suscribed to me on this day 2/16/96
[EDITORS' NOTE: DETECTIVE'S NAME IS ELECTRONICALLY NON-TRANSFERRABLE.]
Witness: _____________________________
Witness: _____________________________
 Page 1 of 3 Pages
TIME STATEMENT FINISHED _____ A.M. 12:00 P.M. DATE ____________
PAGE 2 of 3
FEB. 16, 1996 STATES EXHIBIT 2B VOLUNTARY STATEMENT
TAKEN BY DET. PELOSI
AND HE WAS TELLING ME HOW HE REALIZED THAT HE COULD MAKE A LOT
MORE MONEY SELLING ON HIS OWN WITHOUT TIN CONDE. SO ABOUT 1 MONTH
AGO DAJOHN JUST STOPPED SELLING FOR TIN A BEGAN TO SELL FOR
HIMSELF BUT HE DIDNT TELL TIN. TIN AND GORDO CAUGHT ON THAT MY
BROTHER WAS SELLING AND I AM SURE THAT THEY GOT PISSED OFF AT
DAJOHN. GORDO IS ALWAYS WITH TIN AND GORDO IS THIS BIG FAT GUY
THAT ACTS AS TINS ENFORCER AND KEEPS EVERYBODY IN LINE FOR TIN
WHEN IT COMES TO SELLING HEROIN IN THE SOUTH END OF WATERBURY. I
HAVE KNOWN GORDO FOR ABOUT 6 MONTHS AND I KNOW THAT HE IS NOT
FROM WATERBURY. HE JUST SEEMED TO HOOK UP WITH TIN. GORDO WOULD
ALSO COLLECT MONEY FROM THE DIFFERENT PEOPLE WHO WERE SELLING FOR
TIN. DAJOHN AND GORDO NEVER REALLY GOT TOGETHER. ABOUT ONE AND A
CT Page 5118-NNN
HALF MONTHS AGO I KNEW THAT DAJOHN OWED TIN ABOUT $1,000.00. AT
THE TIME DAJOHN WENT OUT AND BOUGHT A RED MUSTANG THAT HE BOUGHT
FROM HIS OWN MONEY. WHEN GORDO SAW DAJOHN WITH THE MUSTANG HE GOT
ALL PISSED OFF AT HIM BECAUSE DAJOHN OWED THE 1,000.00. DAJOHN
WOULD CALL ME ON THE PHONE AND TELL ME THAT GORDO WAS BUSTING HIS
BALLS BAD. SEE GORDO AND TIN WOULD NEVER FUCK WITH ME BECAUSE
THEYRE SCARED OF ME. THEY WOULD GIVE DAJOHN A HARD TIME USUALLY
WHEN I WASNT AROUND. ABOUT 4 DAYS AGO I WAS BETWEEN THE TWIN
BLOCKS ON EAST LIBERTY ST. IT WAS DURING THE DAY AND I SAW GORDO
GORDO STARTED ASKING ME WHATS UP WITH MY BROTHER AND GORDO SAID
THAT DAJOHN WAS DISRESPECTING TIN AND HIMSELF BECAUSE DAJOHN WAS
OUT SELLING ON HIS OWN. ME AND GORDO STARTED YELING AT EACH OTHER
AND GORDO SAID TO ME "ILL BE BACK" AND I TOLD HIM THAT I WOULD BE
BACK. ABOUT 15 MINUTES LATER I WENT BACK TO THE TWIN BLOCKS AND
IT WAS ME AND MY BOY FROM BRIDGEPORT. MY FRIENDS NAME WAS JOE.
WHEN WE WERE THERE GORDO AND ANOTHER GUY PULLED UP IN A WHITE CAR
THAT GORDO WAS DRIVING. GORDO AND THE OTHER GUY GOT OUT OF THE
CAR. GORDO GOT IN MY FACE REAL QUICK AND HE STARTED YELLING AT ME
ABOUT MY BROTHER AND DISRESPECT. WHILE GORDOS YELLING AT ME THE
OTHER GUY SNUCK UP BEHIND ME. THE GUY HAD ALL BLACK ON AND I
TURNED AROUND. HE WAS REALLY CLOSE TO ME AND HE STARTED TALKING
ABOUT PEOPLE THAT I HAD KNOWN. I REALIZED THAT THE GUY FROM WHAT
HE WAS SAYIN TO ME WAS A GUY THAT I KNOW AS "CHELO" WAS HIS
BROTHER. THE GUY WAS "CHELOS" BROTHER. HE KNEW MY NAME WAS "LOCO
RICK". THE 4 OF US KEPT ON ARGUING AND "CHELOS" BROTHER REACHED
INTO HIS FRONT WAIST BAND AND PULLED OUT A GUN. HE SAID "SO YOURE
THE FAMOUS LOCO RICK?" AND HE WAS WAIVING THE GUN TOWARD ME AND I
THOUGHT HE WAS GOING TO SHOOT ME OVER ALL THIS BULLSHIT. I JUST
STARTED WALKING AWAY AND GORDO AND "CHELOS" BROTHER LEFT. I
THOUGHT FOR SURE THAT I WAS GOING TO GET SHOT. "CHELOS BROTHER
WAS YELLING AT (RDJ)
I have read this statement consisting of 3 pages.
The facts therein contained are true and correct and I have given
the above statement of my own free will after my constitutional
rights had been explained to me.
Signed in the presence of:
 Signed: RENE DeJESUS
Witness: ______________________ SWORN AND SUSCRIBED TO ME ON
 FEB. 16, 1996
[EDITORS' NOTE: DETECTIVE'S NAME IS ELECTRONICALLY NON-TRANSFERRABLE.]
CT Page 5118-OOO
TIME STATEMENT FINISHED ___________ A.M. 12:00 P.M.
PAGE 3 of 3
FEB. 16, 1996
TAKEN BY DET. PELOSI VOLUNTARY STATEMENT
ME IN SPANISH. BOTH GORDO AND CHELOS BROTHER WERE TELLING ME THAT
THEY THOUGHT THAT DAJOHN WAS SNITCHING TO THE POLICE BECAUSE WHEN
DAJOHN GOT ARRESTED THE LAST TIME THE BOND WAS ORIGINALLY HIGH
AND WHEN DAJOHN WENT TO COURT THE BOND WENT LOW. SO THEY WERE
MORE MAD AT DAJOHN BECAUSE THEY THOUGHT HE WAS TALKING TO THE
COPS AND DAJOHN NEVER TALKED TO THE COPS. GORDO BLAMED DAJOHN FOR
WHEN GORDO GOT ARRESTED. GORDO SAID THAT BECAUSE MY BROTHER
SNITCHED HE GOT ARRESTED AND GORDO WAS MAD. CHELOS BROTHER STILL
HAD THE GUN OUT AND HE SAID THAT HE WOULD PUT ME IN A WHEELCHAIR.
GORDO WAS STILL YELLING AT ME AND HE SAID THAT HE WOULD GET
DAJOHN BECAUSE OF THE SNITCHING. I KNEW BY WHAT HAD HAPPENED AND
FROM WHAT GORDO AND CHELOS BROTHER WERE SAYING TO ME THE THEY
WERE GOING TO TRY TO SHOOT DAJOHN. BOYHK BOTH GORDO AND CHELOS
BROTHER KEPT ON SAYING THAT THEY WERE GOING TO GET DAJOHN. THE
GUN THAT CHELOS BROTHER HAD OUT WAS A CHROME COLORE WHAT I
THOUGHT TO BE A 9 MILLIMETER. WE ALL KEPT ON YELLING AND CHELOS
BROTHER STILL HAD THE GUN OUT AND MY BOY JOE REACHED DOWN TO HIS
WAIST TO MAKE GORDO AND CHELOS BROTHER THINK THAT HE HAD A GUN.
WHEN THIS HAPPENED THEY JUST TOOK OFF. FROM THEN ON I KNEW THAT
THEY WERE GOING TO TRY TO KILL MY BROTHER DAJOHN. THIS WHOLE
THING IS ABOUT SELLING HEROIN ESPECIALLY TIN CONDES HEROIN. TIN
CONDE RUNS THE HEROIN OPERATION IN THE SOUTH END AND I KNOW THIS
BECAUSE I USED TO SELL FOR HIM. TIN IS BEHIND THE KILLING OF MY
BROTHER AND HE ORDERED MY BROTHER TO BE KILLED. TODAY I LOOKED AT
3 PICTURE ARRAYS SHOWED TO ME BY DET. PELOSI. IN THE ONE MARKED
"A" THE PERSON IN SLOT #6 IS GORDO WHO I HAVE TALKED ABOUT IN THE
STATEMENT. DET. PELOSI TOLD ME THAT GORDOS REAL NAME IS RAUL
LOPEZ AND HIS ID NUMBER IS 57904. I THEN SIGNED AND DATED THE
BACK OF THE PICTURE. I THEN LOOKED AT THE PICTURE ARRAY MARKED
"B". IN THAT ONE I PICKED OUT THE PERSON IN SLOT 1 AS BEING TIN
CONDE. DET. PELOSI TOLD ME THAT THIS IS MARTIN CONDE AND HIS ID #
50305. I THEN SIGNED AND DATED THE BACK OF THAT PHOTO I THEN
LOOKED AT THE PICTURE ARRAY MARKED "C". THE GUY IN PHOTO # 5 IS
CHELOS BROTHER, THE GUY WITH THE GUN. DET. PELOSI TOLD ME HIS
NAME IS ELIEZERCRUZ. I THEN SIGNED AND DATED THE BACK OF THAT
PHOTO. I HAVE READ THIS STATEMENT AND IT IS THE TRUTH. I
UNDERSTAND ENGLISH GOOD BUT OFFICER JUAN RIVERA ALSO READ IT BACK
TO ME IN (RDJ) SPANISH.
CT Page 5118-PPP
I have read this statement consisting of 3 pages.
The facts therein contained are true and correct and I have given
the above statement of my own free will after my constitutional
rights had been explained to me.
Signed in the presence of:
 Signed: RENE DeJESUS
Witness: ________________________ SWORN AND SUSCRIBED TO ME ON
 FEB 16, 1996
[EDITORS' NOTE: DETECTIVE'S NAME IS ELECTRONICALLY NON-TRANSFERRABLE.]
TIME STATEMENT FINISHED __________ A.M. 12:00 P.M.