STATE OF CONNECTICUT *v.* TERRENCE S. MURPHY
(3214)

DUPONT, C. J., SPALLONE and BIELUCH, Js.

Argued December 6, 1985—decision released March 11, 1986

*James J. Alaimo, Jr.,* with whom, on the brief, was *Edward Ponticoloni,* for the appellant (defendant).

*Jeffrey L. Kline,* special assistant state's attorney, for the appellee (state).

DUPONT, C. J. This is an appeal from the judgment of guilty rendered against the defendant, following his pleas of nolo contendere, to the crimes of tampering with physical evidence, a violation of General Statutes § 53a-155, illegal possession of marihuana, a violation of General Statutes § 21a-279 (c), and violation of probation, a violation of General Statutes § 53a-32. The defendant entered his pleas conditional on the right to

appeal from the trial court's denial of his motion to suppress evidence based on an unreasonable search or seizure. See General Statutes § 54-94a. The sole issue on appeal is whether the court should have granted the motion to suppress because the search in question violated either the fourth amendment to the United States constitution or article first, § 7 of the Connecticut constitution.

The defendant was stopped while driving his motor vehicle by a police officer for a minor traffic violation. A check of the vehicle registration by the police officer revealed that the temporary registration of the defendant's motor vehicle had expired less than one hour before the defendant was stopped. The defendant was issued a summons by the police officer for operating an unregistered motor vehicle, and for an improper turn. At this point, the police officer informed the defendant that his automobile would be impounded pursuant to police department policy. The police officer asked the defendant to remove any valuables from the automobile. The defendant replied that there were no valuables in his automobile and that he wished to have his automobile taken to his home, approximately one and a half miles from the location of the stop, rather than have his automobile impounded and towed to a police lot. The police officer denied the defendant's request and began to search the defendant's automobile in order to inventory its contents. In the course of this inventory, the police officer opened the glove compartment of the defendant's automobile and observed a mirror lying face up with a quantity of white powder on it. At this point, a passenger, who had been in the defendant's vehicle from the time it was initially stopped, attempted to leave the scene. As the police officer got out of the defendant's automobile in order to prevent the passenger from leaving, the defendant reentered his vehicle and turned over the mirror, spill-

ing its contents onto the car seat. As a result of the defendant's action, an insufficient amount of the substance remained for chemical analysis. Upon resuming his search, the police officer also discovered the remains of two marihuana cigarettes in the ashtray of the defendant's car. The defendant was later placed under arrest and charged with tampering with physical evidence and possession of marihuana.

It is conceded by the parties that the search was a warrantless one and, therefore, must come within a recognized exception to the warrant requirement of the fourth amendment in order to be reasonable and thereby pass constitutional muster. See *State* v. *Zindros,* 189 Conn. 228, 236–38, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984); *State* v. *Tully,* 166 Conn. 126, 133–35, 348 A.2d 603 (1974). Although several exceptions to the warrant requirement have been recognized, the parties agree that the only exception at issue in this case is the administrative inventory search of the type recognized in *South Dakota* v. *Opperman,* 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976).[1] See also *State* v. *Gasparro,* 194 Conn. 96, 107, 480 A.2d 509 (1984), cert. denied, 474 U.S.    , 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985);[2] *State* v. *Reddick,* 189 Conn. 461, 467, 456

---

[1] There are four recognized situations where a warrantless search of a car may lead to the conclusion that such a search was reasonable under the United States or state constitutions. They are: (1) it was made incident to a lawful arrest; (2) it was conducted when there was probable cause to believe that the car contained contraband or evidence pertaining to a crime; (3) it was based upon consent; or (4) it was conducted pursuant to an inventory of the car's contents incident to impounding the car. *State* v. *Reddick,* 189 Conn. 461, 467, 456 A.2d 1191 (1983). The defendant in this case was arrested during the course of the search of his automobile, but it is unclear from the record at what exact point during the events in question the defendant's arrest took place. There is no claim that the search in question satisfies any exception to the warrant requirement other than that it was a proper inventory search.

[2] *State* v. *Gasparro,* 194 Conn. 96, 480 A.2d 509 (1984), cert. denied, 474 U.S.    , 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985), upholds the search of a car, after it was taken to the police department, as an inventory search,

A.2d 1191 (1983).[3] The state contends that the factual pattern in this case is similar to that reviewed by the United States Supreme Court in *Opperman* and that the search in question should be upheld on the basis of the same policies as those advanced in *Opperman*. The defendant maintains that the factual pattern of *Opperman* is inapposite to the present case.

In *Opperman*, the United States Supreme Court held that an inventory search of the contents of an automobile, impounded by the police for multiple parking violations, was not an unreasonable search in violation of the fourth amendment, where the inventory search was conducted in accordance with standard police procedures and the inventory was not for investigatory purposes. In order to determine the reasonableness of a routine inventory search, a court is required to weigh "the governmental and societal interests advanced to justify such intrusions against the constitutionally protected interest of the individual citizen in the privacy of his effects." *South Dakota* v. *Opperman,* supra, 378 (Powell, J., concurring); see also *Illinois* v. *Lafayette,* 462 U.S. 640, 643–44, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983); *Delaware* v. *Prouse,* 440 U.S. 648, 654, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979).

In applying this balancing test, the Supreme Court identified three governmental and societal interests in support of inventory searches: (1) protection of the

where there was probable cause at the time of the search to believe that the defendant had committed a felony, the car could not be left indefinitely on a public street, and the apparent owner had expressed concern about leaving the car on a public street.

[3] In *State* v. *Reddick,* 189 Conn. 461, 456 A.2d 1191 (1983), it was held that a warrantless search of a car belonging to a defendant was not constitutionally infirm since the defendant had consented to the search preliminary to the impoundment. The court did not reach the issue of whether the search of the defendant's car was constitutionally permissible under the federal and state constitutions as an inventory search before impoundment of the car.

police from danger; (2) protection of the police against claims and disputes over lost or stolen property; and (3) protection of the owner's property while it remains in police custody. *South Dakota* v. *Opperman,* supra, 369. When these interests singly or together comprise the reason for invading a citizen's expectation of privacy in his automobile,[4] the Supreme Court has concluded that the limited intrusion into an individual's privacy interest caused by an inventory search is outweighed by the legitimate governmental interests embodied in the "community caretaking functions" of the police. Id., 368–69; *Cady* v. *Dombrowski,* 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973); see also *State* v. *Tully,* supra, 136–37.

An examination of the governmental interests usually advanced in support of inventory searches leads to the conclusion that the inventory search in this case was unreasonable. The first governmental interest, protection of the police from potential danger, cannot justify the inventory search in this case. See *Cooper* v. *California,* 386 U.S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1967). It is generally acknowledged that, except in rare cases, there is little danger to the police in impounding automobiles which have not been subjected to an inventory search. *South Dakota* v. *Opperman,* supra, 378 (Powell, J., concurring). In this case, the police officer testified that he did not observe anything in the defendant's vehicle which constituted a threat to him. The officer further testified that he had no suspicion that a possible felony or misdemeanor was in progress at the time he stopped the defendant's vehicle.

---

[4] The United States Supreme Court has concluded that there is a lesser expectation of privacy in an automobile, as compared to a home or office, on the basis of two factors: (1) the extensive governmental regulation of automobiles, including such periodic contacts as licensing and safety inspections; and (2) the public nature of automobile travel, where both the occupants and the contents of the car are usually in plain view. See *South Dakota* v. *Opperman,* 428 U.S. 364, 367–68, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976); *Cardwell* v. *Lewis,* 417 U.S. 583, 590, 94 S. Ct. 2464, 41 L. Ed. 2d 325 (1974).

The other two governmental interests identified in *Opperman,* protection of police against claims and disputes over lost or stolen property and protection of the owner's property while it remains in police custody, could have been satisfied by having the defendant's vehicle towed to his home, as the defendant requested, rather than having the vehicle impounded and searched.

A police officer testified that the defendant's car could have been towed to his home, in accordance with police department regulations, if satisfactory arrangements for the towing charge were made with the authorized "impound" towing service but that an inventory was first required.[5] If police department policy allowed the car to be towed to the home of its owner, an inventory just prior to such towing was not necessary to protect the police against claims of lost or stolen property or necessary to protect the owner's property while in police custody.

State courts sometimes disagree as to the constitutionality of inventory searches based on the particular facts or the particular administrative procedures, but, in general, agree that the police should inventory an impounded vehicle when the owner or possessor is present at the time only if he elects to allow the police to have custody of it. See 2 LaFave, Search and Sei-

---

[5] The written police department policy for inventory searches establishes a procedure for inventory of a motor vehicle after a police officer has taken a vehicle into custody. It states that "[a]ny motor vehicle that is taken into custody by a police officer for any of the following reasons shall be inventoried . . . ." One of the reasons listed is "[m]otor vehicles taken into custody on a motor vehicle violation (drunk driving, unregistered, under suspension, etc.)." The written procedure is to be instituted for several reasons and lists those reasons as the protection of the owner's property, the protection of the police officer against claims over lost or stolen property and the protection of the public and police from dangerous contents in the motor vehicle. The procedure may be read as giving a police officer guidelines for determining when a car shall be taken into custody, but that if none of the reasons for an inventory search is present, an unregistered car should not be taken into custody.

zure: A Treatise on the Fourth Amendment § 7.4. If the defendant's car had been towed the one and a half miles to his house, after satisfying the "impound wrecker" of payment for the towing, the police could have eliminated any bailment situation and, thus, protected themselves from claims involving lost or stolen property, and the defendant could have protected his own property.[6]

Whether a search is reasonable is to be determined on a case by case basis, depending upon the particular fact situation. *South Dakota* v. *Opperman,* supra, 373, 375; *Coolidge* v. *New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971). On the facts of this case, the search was not reasonable. The ownership and registration of the car had been established by the time of the search to inventory the contents of the glove compartment and the defendant had already stated that no valuable property was located in the car. See *South Dakota* v. *Opperman,* supra, 372. The policy of the police department did not require that the vehicle be held in its custody if the defendant could make arrangements, through an authorized towing service, for its removal from the side of the highway and no valuables were visible to the police.

The conclusion that the inventory search in this case was unreasonable is not inconsistent with the United States Supreme Court's decision in *Opperman.* In *Opperman,* the court observed that "[t]he owner, having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his

---

[6] "Such alternative means of disposition serve not only to protect the arrestee's possessory and privacy interests in the vehicle but also to relieve the police of continuing responsibility for the car and its contents, and thus are to be preferred over impoundment when one such alternative has been requested by a properly-advised arrestee and can reasonably be accomplished under the circumstances." 2 LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 7.5.

belongings. The inventory itself was prompted by the presence in plain view of a number of valuables inside the car." *South Dakota* v. *Opperman,* supra, 375–76. In the present case, however, the availability of the defendant to make other arrangements for the towing of the vehicle made the inventory search, and subsequent impoundment of the vehicle unnecessary and unreasonable.[7] See, e.g., *Arrington* v. *United States,* 382 A.2d 14 (D.C. App. 1978); *Judge* v. *State,* 419 So. 2d 1171 (Fla. App. 1982); *Miller* v. *State,* 403 So. 2d 1307 (Fla. 1981); *State* v. *McDaniel,* 383 A.2d 1174 (N.J. Super. 1978); see also note, "Lawfulness of 'Inventory Search' of Motor Vehicle Impounded by Police," 48 A.L.R. 3d 537. Nor were there any valuables in plain view in this case, in contrast to the factual situation in *Opperman.* See also *State* v. *Tully,* supra, 129, 136.[8]

The defendant has claimed, as error, the failure to suppress evidence, under the constitutions of the United States and of Connecticut. Both constitutions forbid most searches as unreasonable when they occur outside the judicial process. The federal constitution is our national guaranty of minimal standards for the protection of our citizens against unreasonable searches and seizures, but nothing in the fourth amendment to the United States constitution or in its fourteenth

---

[7] Although the majority in *Opperman* did not specifically address the issue of whether an inventory search is permissible where the owner is present to make other arrangements, several justices concluded that the majority opinion did not sanction an inventory search under such circumstances. *South Dakota* v. *Opperman,* 428 U.S. 364, 392 n.12, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976) (Marshall, J., dissenting).

[8] It is not clear on this record that the inventory search was carried out for noninvestigatory purposes and according to established police procedures. On cross-examination, the police officer testified that he looked in the ashtray of the defendant's motor vehicle "[b]ecause I had found contraband in the car, which led me to believe that there was other narcotics in the car and that the ashtray would be a place for narcotics." The examination of the ashtray, which the officer admitted was an unlikely place for the defendant to store any valuables, was subsequent to the officer's examination of the glove compartment and discovery of the mirror.

amendment prevents individual states from marching to the cadence of a higher standard. *State* v. *Kimbro,* 197 Conn. 219, 234–35, 496 A.2d 498 (1985). Under either constitution, whether or not the Connecticut constitution provides more or equivalent protection against unreasonable warrantless searches than does the fourth and fourteenth amendments to the United States constitution, the motion to suppress the evidence garnered in this inventory search should have been granted.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.