## STATE OF CONNECTICUT *v.* TROY HICKS
### (AC 17594)

Hennessy, Sullivan and Spallone, Js.

Argued March 22—officially released May 25, 1999

*John T. Walkley*, special public defender, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Carl E. Taylor*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SPALLONE, J. This is an appeal by the defendant, Troy Hicks, from the judgments rendered following the trial court's denial of his motions to suppress tangible

evidence. On appeal, the defendant claims that the trial court improperly denied his motions to suppress tangible evidence by ruling that the police seized the evidence pursuant to lawful inventory searches of the defendant's motor vehicles. We are not persuaded and affirm the judgments of the trial court.

The defendant was charged in two informations as follows: In one case, the defendant was charged with possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a) and conspiracy to sell narcotics by a person who is not drug-dependent in violation of General Statutes §§ 21a-278 (b) and 53a-48 (a).

In the second case, the defendant was charged with two counts of forgery in the second degree in violation of General Statutes § 53a-139 (a) (3) and one count of interfering with a peace officer in violation of General Statutes § 53a-167a. On May 9, 1997, the state filed a motion to consolidate the two cases for trial, which was granted by the trial court on May 29, 1997.

On June 10, 1997, the defendant filed a motion in each case to suppress the tangible evidence seized by the state. After a hearing, the trial court denied the defendant's motions to suppress. On June 25, 1997, the defendant entered pleas of nolo contendere to the charges of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a)[1]

[1] General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined

and forgery in the second degree in violation of § 53a-139 (a) (3).[2]

The following facts are relevant to this appeal. On November 4, 1994, Detective Timothy Shaw and Officers Frederick Jainchill and Richard Gutska of the Hartford police department were in a marked police cruiser proceeding southbound on Garden Street in an area of Hartford known to be high in the incidence of crime, including drug dealing. The officers observed the defendant step out of a blue Mazda van parked along the curb on Garden Street. The defendant appeared to lock the van as he exited, holding keys in one hand and a yellow object in the other. The defendant, known to the police as a drug dealer, was believed to be in possession of heroin packaged in yellow wrappers. Shaw knew that in this area heroin was usually packaged in yellow or white wrappers.

Believing that the defendant was engaging in criminal activity, the police followed him to the corner of Garden and Bedford Streets. Gutska and Jainchill left the cruiser to observe the defendant who, upon seeing them, fled on foot. As the defendant approached Albany Avenue, the officers saw him discard the yellow object he was carrying. When the object hit the ground, several smaller yellow packets spilled from it. The pursuing officers retrieved eight packets, which were later found to contain heroin.

not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[2] General Statutes § 53a-139 (a) provides in relevant part: "A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument or issues or possesses any written instrument which he knows to be forged, which is or purports to be, or which is calculated to become or represent if completed . . . (3) a written instrument officially issued or created by a public office, public servant or governmental instrumentality . . . ."

Hicks continued running in the direction of Shaw, who was alerted by the officers that the defendant was headed toward him. Shaw saw the defendant cross Albany Avenue, heading toward Garden Street. While pursuing the defendant, Shaw saw him discard what later proved to be keys to the van from which the defendant had fled. Shaw unlocked the van with the keys that the defendant had discarded. Because the van was to be towed, Shaw entered the van in order to secure the van's registration and to conduct an inventory search. The passenger compartment of the van was searched to determine the presence of any valuable items that might be the subject of a subsequent claim of lost or stolen property. Upon entering the van, Shaw discovered two plastic bags between the front bucket seats containing smaller yellow bags, which later were found to contain heroin.

On June 19, 1995, at approximately 9 p.m., Shaw and Gutska were transporting a prisoner in their cruiser. As they approached the intersection of Collins and Garden Streets, they were almost hit by a Honda Prelude, which ran a red light across the path of the cruiser. The police stopped the vehicle for the red light violation. As Shaw approached the vehicle on foot, he recognized the defendant as the driver of the van from the November 4, 1994 incident. Upon seeing Shaw, the defendant performed a U-turn and sped away, almost colliding with another vehicle. The police officers gave chase but discontinued their pursuit when they felt it was unsafe to continue. Shaw reported the information about the car and informed the dispatcher that they were ending the search. Within a few seconds, an officer in a different patrol car reported seeing the defendant's vehicle in the area and reported that the driver had parked the car on Sigourney Street near Albany Avenue and had fled on foot toward Edgewood Street.

Upon arriving at the scene, Shaw and Gutska recognized the Honda Prelude as the vehicle that the defendant had been driving. The driver's window was open and the car was unlocked. The officers initiated procedures to have the Honda towed. Shaw entered the Honda to obtain its paperwork and to look for valuables prior to towing. Upon entry, Shaw noticed a portable car phone and a wallet on the floor of the front passenger seat. The wallet contained a driver's license in the name of Anthony Johnson but the defendant's picture was embossed on the license. The wallet also contained credit cards in Johnson's name, as was the motor vehicle registration found in the glove compartment.

We agree with the trial court and hold that the items found in the van and the Honda Prelude were seized pursuant to a valid inventory search. The United States Supreme Court has stamped its imprimatur on routine inventory searches. *South Dakota* v. *Opperman*, 428 U.S. 364, 367–76, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976). Where an inventory search has been performed, the question is not whether the search was authorized by state law, but whether the search was reasonable under the fourth amendment. Id., 372. In determining the reasonableness of a routine inventory search, "a court is required to weigh 'the governmental and societal interests advanced to justify such intrusions against the constitutionally protected interest of the individual citizen in the privacy of his effects.' " *State* v. *Murphy*, 6 Conn. App. 394, 397, 505 A.2d 1251 (1986), quoting *South Dakota* v. *Opperman*, supra, 378 (Powell, J., concurring). "Whether a search is reasonable is to be determined on a case by case basis, depending upon the particular fact situation." *State* v. *Murphy*, supra, 400. There are three governmental interests that support inventory searches: "(1) protection of the police from danger; (2) protection of the police against claims and disputes over lost or stolen property; and (3) protection

of the owner's property while it remains in police custody. *South Dakota* v. *Opperman,* supra, 369." *State* v. *Murphy,* supra, 397–98.

We hold that the warrantless searches of the two vehicles were lawful under *Opperman* and *Murphy.* The trial court's denial of the defendant's motions to suppress the items seized was lawful, rational and in accordance with applicable law.

The judgments are affirmed.

In this opinion the other judges concurred.