[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S REVISED MOTION TO SUPPRESS DATED MARCH 1, 1999
As the result of incidents alleged to have occurred on and before September 30, 1996, James Gordon "Bo" Gritz has been charged with criminal attempt to commit kidnapping in the second degree in violation of General Statutes §§ 53a-49 (a)(2) and53a-94 (a); conspiracy to commit kidnapping in the second degree in violation of General Statutes §§ 53a-48 (a) and 53a-94 (a); criminal attempt to commit custodial interference in the first degree in violation of General Statutes §§ 53a-49 (a)(2), 53-97 (a)(2) and 53a-8 (a); conspiracy to commit custodial interference in the first degree in violation of General Statutes §§ 53a-48 (a), 53a-97 (a)(2) and 53a-8 (a); and loitering on school grounds in violation of General Statutes § 53a-185
(a).[1] Through his Revised Motion to Suppress dated March 1, 1999, the defendant has asserted that he was subject to an illegal search of his person and/or his vehicle on September 30, 1996. Submitting that his rights as provided by under the fourth,fifth, sixth and fourteenth amendments to the United States constitution and article first; §§ 7, 8, and 9 of the state constitution and as protected by the exclusionary rule were thereby violated, the defendant has moved to suppress all of the fruits of this search and seizure. Specifically, the defendant CT Page 1425-ad claims that the stop of his vehicle on September 30, 1996 was not authorized by law; that the subsequent search of the defendant's person was unlawful and exceeded proper bounds; and further that the search of the vehicle at issue was also unlawful and exceeded proper bounds.
In determining the relevant facts pertinent to the pending issues, the court has considered the credible testimony and evidence presented at the suppression hearing conducted before the court on December, 7, 8, 9, 10, 14 and 21, 1999. From this evidence, and the reasonable and logical inferences drawn from the facts proven, the court finds as follows:
In February 1994, following a pre-judgment hearing, physical and legal custody of Jonathan Wiegand, Wiegand's child by a previous marriage, and Benjamin Wiegand, issue of the Wiegand-Wilkinson marriage, was awarded to Wilkinson's sister, Karen. Immediately thereafter, the children and Wiegand disappeared. In early July 1996, Wiegand and the children were discovered in Las Vegas, Nevada: Jonathan and Benjamin were promptly returned to Suffield, Connecticut, where they commenced residence with Thomas Wilkinson, their lawful custodian. In the summer of 1996, Wilkinson reported to the Suffield Police Department, and advised that agency of his concern that Wiegand would again unlawfully remove the children from the state of Connecticut.[2]
On September 10, 1996, when Wilkinson took the boys to the Suffield Police Department to record their fingerprints, he produced a written document received by facsimile transmission, and represented to the police that this document indicated that the boys were in danger. Later in September 1996, Wilkinson informed the Suffield police that he had heard that Wiegand was involved with a militia organization, and that he again feared the children's removal from this state.
In September 1996, Jonathan Wiegand attended McAllister Middle School and Benjamin Wiegand attended Spaulding Elementary School, both public schools in Suffield. During the first days of the school year, Wilkinson met or spoke with the principals and vice-principals of both schools, advising them of his fear that CT Page 1425-ae Wiegand may attempt to take the children. The officials at both schools communicated with the Suffield Police Department to determine the most appropriate methods for protecting the safety of children while they were on school grounds.
On September 30, 1996, at some time in the late morning or early afternoon, Dorothy Williams-Ciocci, the Vice Principal of Spaulding Elementary School called the Suffield police department to report an unauthorized vehicle in the parking lot of that school. She related a description of a red pickup truck with a person or people in the vehicle, and identified a license plate registration number.
Officer David Reese of the Suffield Police Department promptly responded to the Spaulding School in search of the unauthorized vehicle. Officer Reese did not observe a red pickup truck in the parking lot, and returned to the station to check the reported registration of the vehicle. He found that the owner of the vehicle with the reported license plate was a business in the southern part of Connecticut. Reese concluded that there was likely an error in the reporting of the plate registration number.
Prior to the call from Spaulding Elementary School, Officer Reese had a heightened sense of security for the safety of the Wiegand boys. Officer Reese was aware that Wiegand had left the state with the children without authority in 1994 and that she was found in Las Vegas, Nevada with the children in 1996. In the past, Reese had spoken with Wilkinson when he had reported to the Suffield Police Department his persistent fear that Wiegand may attempt to take the children again. Reese was also aware that both the Suffield schools and the police were maintaining a heightened state of security with regard to the safety of the Wiegand boys.
Approximately 2:00 p.m. on September 30, 1996, Reese drove a marked police cruiser to the McAllister School to determine whether the red pickup or any other suspicious vehicle might be at that location. Soon after Reese entered the school parking lot, he noticed a green-blue 1995 Mitsubishi automobile[3] also CT Page 1425-af in the parking lot. The vehicle, which was being driven toward Reese, had two occupants: a man appearing to be in his thirties was driving the vehicle, and another man, appearing to be in his fifties, sat in the front passenger seat. The car drove past Reese and came to a stop within in a marked parking space. As the car was driving toward him, Reese noticed that the vehicle had an out state registration plate.
Reese pulled into and parked in a marked space next to the vehicle without activating his lights or sirens. Upon exiting the cruiser, Reese noted that the Mitsubishi's out of state license plate indicated the vehicle's registration in the state of Nevada. Reese became concerned because he knew that Jonathan Wiegand attended McAllister School, that the Wiegand children had previously been discovered in the state of Nevada, and because the time that children would be dismissed from the McAllister school would soon arrive. He approached the operator's side to satisfy several law enforcement concerns, including the occupants' role in a possible kidnapping attempt and illegal drug sales upon school grounds. While the operator remained seated in the vehicle, Reese asked why they were present in the school parking lot. The operator responded that he was "there to buy a `57 Chevy." The operator told Reese that the vehicle had been there often; that he did not know the name of the individual with the vehicle for sale; that he did not know the phone number of the seller; that he did not have the cash with him to buy the vehicle; and that he could offer no corroboration for his story. Reese, familiar with the McAllister School parking lot as the result of his prior police patrol duties, had seen vehicles for sale their previously. However, he had not recently seen a `57 Chevy parked in that school, nor did he see such a vehicle in the lot at that time. Reese testified that each response from the operator seemed misleading and "increased his suspicion" that the occupants were not, as they stated, on school grounds for the purpose of purchasing a vintage automobile.
While standing beside the operator's side door, Reese viewed two professional-type, multi-channel two-way radios on the floor of the vehicle in the front portion of the passenger compartment, one resting on the transmission hump and the other near the CT Page 1425-ag passenger's feet. Upon questioning as to why he had these radios in the vehicle, the operator stated that he had brought them along to protect against their theft from his hotel room, but provided no further purpose for which the radios would be used. Having determined that there was little sense or logic to the operator's explanation for the presence of the two men at this school, accompanied by the radios and occupying a vehicle with Nevada license plates, Reese asked for identification from both occupants, and received their operator's licenses. He learned that James R. Gritz (JRG) was the operator of the vehicle, and that James Gordon (Bo) Gritz (the defendant) was the passenger, and that the defendant was JRG's father. Reese called the Suffield police dispatcher asking if the men were wanted for arrest or had any outstanding warrants.
Reese then asked the men to step out of the vehicle, then performed a pat-down search upon each of them. On JRG, Reese found a folding-type knife with a serrated silver-colored blade and black nylon handle in a leather holster attached to his belt: when Reese pulled the knife from the holster, the blade automatically extended from its handle. Reese also found a lock-picking tool kit; a small flashlight in a holster; a screw driver set; and a spare battery for the two-way radios, upon JRG's person.
During his patdown of the defendant, Reese found a flashlight in a holster and a spare battery for the radios. Touching the defendant's jacket in the area of a pocket; Reese also found a small prescription bottle containing what appeared to be medicine, bearing a label from a CVS pharmacy which identified the physician's name as "Dr. Gordon Ahlers", the recipient's name as "Linda Wiegane", the contents as "Biaxin", and dated September 30, 1996. Upon Reese's inquiry, the defendant explained that Wiegand had obtained the prescription for him because he had an ear infection.
Reese then entered the vehicle, found a cell phone under the operator's seat; and removed the two-way radios. In plain view, Reese noted a sheet of paper printed with a schedule for McAllister School, located on top of a pile of other documents on CT Page 1425-ah the floor behind the operator's seat. Underneath the school schedule, Reese found, among other documents, a packet of other papers pertaining to school activities, and a Parent Teacher Action Committee bulletin, which had directions to a CVS pharmacy and Wiegand's name and address handwritten on its back.
Reese then viewed a closed cardboard box sitting on the rear passenger seat behind the operator's seat. He opened the cardboard box and discovered within a sheet of paper on top of another pile of documents: this paper contained a photograph of Jonathan and Benjamin Wiegand. Reese testified that he then called for back-up and requested that another officer check the Spaulding School to look for the red pickup truck. As additional officers arrived, JRG and the defendant were placed under arrest, and transported to the Suffield police station. All of the items identified above were located prior to the defendant being placed under arrest or placed into custody. Prior to transport to the police station, the Suffield police officers at the scene determined that probable cause existed to charge the defendant was loitering on school grounds. The charges of attempted kidnapping, custodial interference and conspiracy were added at the police station, although Reese believed that he had probable cause to arrest on all of the charges before he called for backup. At some point prior to the removal of the vehicle from the school parking lot, Reese had learned that the vehicle was registered to Donna Maloney from Las Vegas, Nevada, a known alias for Wiegand. The vehicle was then towed to the Suffield police station, where an inventory of its contents was taken pursuant to department protocol.
 I DETENTION FOR INVESTIGATIVE PURPOSES
The defendant initially complains that the stop of the Mitsubishi by Reese was not authorized by law, and that the fruits of any search which followed from this stop are inadmissible as evidence, but protected by the exclusionary rule. The defendant contends that he was "seized" when Reese approached the vehicle in which he was a passenger, and began questioning the occupants, and that any evidence obtained thereafter was CT Page 1425-ai "seized" in derogation of his constitutional rights. The state responds that Reese did not "stop" the defendant's vehicle as this term has been defined by the Connecticut law, and that Reese's investigation of the defendant; JRG and the Mitsubishi was conducted within Connecticut constitutional bounds. The court finds these issues in favor of the state.
The defendant has rightly identified State v. Oquendo;223 Conn. 635, 613 A.2d 1300 (1992); as establishing an appropriate measure for a court to observe when called upon to determine whether a "seizure" has occurred within the limits provided by Connecticut law. "In analyzing claims of illegal seizure under article first, §§ 7 and 9 of the Connecticut constitution, [the Connecticut Supreme Court has] . . . defined a person as `seized' under state constitution when . . . by means of physical force or a show of authority, his freedom of movement is restrained. . . . In determining whether a seizure has occurred, so as to invoke the protections of our state constitution, we have stated that a court is to consider whether . . . in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. . . . Whether there has been such a seizure in an individual case is a question of fact." (Citations omitted; internal quotation marks omitted.) State v. Oquendo, supra, 223 Conn. 646-47.
In addressing the defendant's first claim, however, the court here is not obligated to apply the principles of "seizure" as set forth through State v. Oquendo and its progeny, because the facts of this case demonstrate that at the time Reese pulled into the marked space next to the vehicle in the McAllister School parking lot, he had reasonable and articulable suspicion adequate to support an investigative detention and interview of the Mitsubishi and its occupants. State v. Wilkins, 240 Conn. 489,495, 692 A.2d 1233 (1997). In assessing whether the officer had an adequate basis for making a preliminary inquiry concerning this situation as presented on September 30, 1996, the court need not determine the precise point at which a purported "seizure" of the defendant or the vehicle occurred. The defendant's reliance upon a "seizure" of the defendant and the vehicle, upon Reese's first intervention, must yield to the application of the CT Page 1425-aj principles of the "Terry stop", as set forth by the United States Supreme Court, and as adopted by the courts of this state. Terryv. Ohio, 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
"The federal law of search and seizure in this area is well settled. The fourth amendment to the federal constitution, made applicable to the states through the due process clause of thefourteenth amendment, provides in relevant part that [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . . State v. Floyd, 217 Conn. 73, 79-80,584 A.2d 1157 (1991). Certain seizures are reasonable under thefourth amendment even in the absence of probable cause if there is a reasonable and articulable suspicion that a person has committed or is about to commit a crime. Florida v. Royer, 460 U.S. 491,498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Terry v. Ohio, [392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)]; State v.Lamme, 216 Conn. 172, 184, 579 A.2d 484 (1990); State v. Anderson,24 Conn App. 438, 441, 589 A.2d 372, cert. denied, 219 Conn. 903,593 A.2d 130 (1991). . . . State v. Kyles, 221 Conn. 643, 659-60,607 A.2d 355 (1992)." (Internal quotation marks omitted.) Statev. Wilkins, 240 Conn. 489, 495, 692 A.2d 1233 (1997). In addition, it is well-acknowledged that "[u]nder both the federal and state constitutions, police may detain an individual forinvestigative purposes if there is a reasonable and articulablesuspicion that the individual is engaged or about to engage incriminal activity." (Emphasis added.) State v. Groomes,232 Conn. 455, 467-68, 656 A.2d 646 (1995).
Under Connecticut constitutional principles, "[r]easonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . the police officer's decision . . . must be based on more than a hunch or speculation. . . . In justifying the particular intrusion the police officer must be able to pointto specific and articulable facts which taken together withrational inferences from those facts, reasonably warrant thatintrusion. . . . State v. Gant, 231 Conn. 43, 65, 646 A.2d 835
CT Page 1425-ak (1994), cert. denied, 514 U.S. 1038, 115 S.Ct. 1404,131 L.Ed.2d 291 (1995)." (Emphasis added; internal quotation marks omitted.)State v. Wilkins, supra, 240 Conn. 496. It is thus firmly established under Connecticut law that "[o]nce a reasonable and articulable suspicion exists, the detaining officer may conduct an investigative `stop' of the suspect to confirm or dispel his suspicions. . . ." State v. Kyles, 221 Conn. 643, 660,607 A.2d 355 (1992).
Under the circumstances of this case, the evidence establishes that at the time that Reese pulled in next to the Mitsubishi, he had a reasonable and articulable suspicion for conducting a Terry-type investigation of the defendant and this vehicle, which had stopped upon school grounds, to dispel his rational suspicions of a possible kidnapping attempt or drug sale at that location. Prior to stopping to speak with the defendant on September 30, 1996, this officer knew that there was generalized heightened security around the two Wiegand children who then resided in Suffield. He was aware that Wiegand had disappeared from the state of Connecticut with the children approximately two years before, and that she and the children were found in the state of Nevada in midsummer of 1996. Reese had spoken with Wilkinson personally regarding Wilkinson's lawful custody of these boys and was aware of Wilkinson's fear that Wiegand would attempt to abduct the children again. Furthermore, Reese knew that Jonathan was attending McAllister Middle School and that Benjamin was attending Spaulding Elementary School. The officer had just completed responding to a call from Spaulding School where he had unsuccessfully looked for an unauthorized automobile, a red pickup truck, that was reportedly within that school's parking lot. Reese had proceeded to the McAllister School for the specific purpose of looking for that red pickup truck or any other vehicle without license or privilege to be there, reasonably believing that such a vehicle might be connected with an attempt to contact the Wiegand children.
The evidence establishes that the Mitsubishi entered and stopped upon the grounds of a public middle school close to the time that the children were to be dismissed. Both our courts and the legislature have recognized the public's interest in CT Page 1425-al maintaining a generally heightened sense of security for the safety of children while on school grounds;[4] this interest should concomitantly be recognized by police officers, such as Reese, who patrol school facilities. Reese reasonably identified the presence of adults, traveling through and/or parked in this school parking at dismissal time, to be an unusual event; because the parking lot was customarily used by teachers or students at the adjacent high school: parents or guardians did not typically park in this particular lot when retrieving their children from school. Reese noted that the vehicle's occupants were not young enough to be students, and, as school was in session, concluded they were likely not to be teachers because the teachers were likely to be engaged in activities within the school building. Additionally, Reese had noted the Nevada license plate on this vehicle before he spoke to the occupants: he had recalled that Nevada was the same state in which the boys were found following their previous abduction by Wiegand.
Thus, viewed objectively, Reese's decision to pull next to the vehicle was based on reasonable, factual observations, far more than a mere "hunch" or speculation. Compare State v. Oquendo, supra, 223 Conn. 635.[5] In this matter. Reese was able to point to articulable facts and reasonable inferences drawn from those facts that warranted both his approaching the stopped vehicle, and the investigative detention and interview of the Mistubishi and its occupants. State v. Wilkins, supra,240 Conn. 496; State v. Kyles, supra, 221 Conn. 660.
 II SEARCH OF THE DEFENDANT'S PERSON
The defendant next asserts that even if the stop of the Mitsubishi was lawful, the subsequent search of his person was unlawful and that the search exceeded its lawful purpose. The court finds these issues in favor of the state.
 A PATDOWN SEARCH CT Page 1425-am In response to the defendant's allegation that the search of his person was unlawful, the state claims that Reese had the authority to perform a patdown of both vehicle occupants at the McAllister Middle School parking lot, and that the scope of the patdown search was within lawful grounds.
Our courts have advised that "[d]uring the course of a lawful investigatory detention, if the officer reasonably believes that the detained individual might be armed and dangerous, he or she may undertake a patdown search of the individual to discover weapons. Terry v. Ohio, supra, [392 U.S.] 24; State v. Williams,157 Conn. 114, 118-19, 249 A.2d 245 (1968). cert. denied,395 U.S. 927, 89 S.Ct. 1783, 23 L.Ed.2d 244 (1969)." State v.Wilkins, supra, 240 Conn. 495-96.
The evidence presented in this case supports the court's conclusion that prior to performing his patdown search of the defendant, Reese had a reasonable basis for believing that he might well be armed and dangerous. Initially, Reese had questioned the occupants of the Mitsubishi as to their purpose for being at that school parking lot. The explanation provided, that the occupants were at that parking lot to look at a 57' Chevy for sale, was not corroborated in any way, and did not assuage the officer's reasonable suspicions concerning the presence of an automobile with Nevada plates on the grounds of a school attended by Jonathan Wiegand. Reese had also detected the two-way radios on the floor in the front seat of the vehicle, which he reasonably inferred could have been used for communication during a possible kidnapping attempt directed at this particular McAllister School student. Furthermore, Reese first performed a patdown search of the vehicle's operator, JRG, for the officer's safety and protection: he had found a sheathed knife upon JRG's belt, confirming the presence of at least one dangerous weapon at that location. The defendant was subsequently subjected to a patdown search.
The question before this court is not whether Reese had a reasonable belief that JRG might be armed and dangerous, but whether Reese had a reasonable belief that the defendant might be armed and dangerous. Under the circumstances of this case, as CT Page 1425-an soon as he had completed his patdown of JRG and found the described knife upon his person, Reese had a reasonable basis for believing that the defendant also might be armed and dangerous: it is reasonable and logical to anticipate that an associate of a person with a weapon may be in possession of a weapon, as well. Thus, the patdown search of the defendant was justified as a means of enabling the investigating officer to determine the presence of weapons that could have been used to harm him.
 B SEARCH INCIDENT TO ARREST
Even if Reese did not have a reasonable belief that the defendant might be armed and dangerous at the time he performed his patdown search, the court finds that Reese had justification to conduct a lawful search of the defendant; contemporaneous and incident to arrest. See State v. Trine, 236 Conn. 216,673 A.2d 1098 (1996).
It is generally acknowledged that "[t]he police ordinarily may not conduct a search and make a seizure unless a neutral and detached magistrate first issues a warrant based on probable cause. [A] search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions . . . Exceptions to the search warrant requirement have been jealously and carefully drawn;., and the burden is on the state to establish the exception. . . ." (Citations omitted; internal quotation marks omitted.) State v. Trine, supra,236 Conn. 235-36.
"One recognized exception to the warrant requirement applies when a search is conducted incident to a lawful custodial arrest.New York v. Belton, 453 U.S. 454, 457-58, 101 S.Ct. 2860,69 L.Ed.2d 768 (1981); State v. Delossantos, 211 Conn. 258, 266-67,559 A.2d 164, cert. denied, 493 U.S. 866, 110 S.Ct. 188,107 L.Ed.2d 142 (1989); State v. Cobuzzi, 161 Conn. 371, 373,288 A.2d 439 (1971), cert. denied, 404 U.S. 1017, 92 S.Ct. 677,30 L.Ed.2d 664 (1972). . . ." (Citations and internal quotation CT Page 1425-ao marks omitted.) State v. Trine, supra, 236 Conn. 235-36. Under the application of Connecticut's constitutional principles to this exception to the warrant requirement; our Supreme Court has specifically affirmed that "[e]ven if a search and seizure chronologically precede a formal arrest, the search and seizure may be constitutionally valid as long as the arrest and thesearch and seizure are substantially contemporaneous and areintegral parts of the same incident. Rawlings v. Kentucky,448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); State v.Federici, 179 Conn. 46, 54-55, 425 A.2d 916 (1979). "(Emphasis added; citations and internal quotation marks omitted.) State v.Trine, supra, 236 Conn. 235-36.
Here, the defendant was arrested at the scene and charged with loitering on school grounds, a violation of General Statutes § 53a-185:[6] this arrest took place immediately following Reese's inquiry, his view into the Mitsubishi, the search of JRG and the defendant; and the search of the vehicle. Thus, the arrest and search at issue were, in this case, substantially contemporaneous and integral parts of the same incident. State v.Trine, supra, 236 Conn. 236.
Based on the evidence presented, the court finds that Reese had the authority to arrest the defendant for violation of §53a-185, a misdemeanor, without a warrant; prior to either the search of his person or of the vehicle. "General Statutes [§] 54-1f
(a) authorizes police officers to arrest an individual without a warrant; for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others. . . . [A] warrantless misdemeanor arrest must be supported by probable cause." (Internal quotation marks omitted.)State v. Santiago, 224 Conn. 494, 498, 619 A.2d 1132 (1993). Connecticut recognizes that "[p]robable cause to arrest exists if(1) there is probable cause to believe a crime has been committed; and (2) there is probable cause to believe that the person to be arrested committed that crime. . . . Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has a reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a [crime] has been committed." CT Page 1425-ap (Citations omitted.) State v. Trine, supra, 236 Conn. 236. The test for determining probable cause is objective, and requires more than mere suspicion. Id., 237. "[T]he line between mere suspicion and probable cause necessarily must be drawn by an act of judgement formed in light of the particular situation and with account taken of all the circumstances. . . . In dealing with probable cause . . . as the very name implies we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, are not legal technicians, act." (Citations omitted; internal quotation marks omitted.) State v. Trine, supra,236 Conn. 236-37.
In this matter, the state has demonstrated that Reese had probable cause to arrest the defendant for a violation of §53a-185 prior to conducting the search at issue. The evidence presented at the hearing clearly establishes that both the defendant and JRG were located on school property at the time that Reese approached the Mitsubishi. Neither the defendant nor JRG provided Reese with any reasonable basis for concluding either that they then had any reason or relationship with a pupil or any other license or privilege to be on the grounds of the McAllister Middle School. Thus, under the circumstances then existing, the investigating officer had probable cause to believe that the defendants were in the act of loitering on school grounds, committing a misdemeanor offense in his presence on September 30, 1996.
Although the formal arrest for loitering on school grounds occurred after the search, the arrest and the search and seizure were substantially contemporaneous and integral parts of the same incident. State v. Trine, supra, 236 Conn. 236. As Reese possessed all facts necessary for probable cause to arrest the defendant for loitering on school ground prior to the search of the defendant's person, the search of his person was justified as a search incident to arrest.
C
SCOPE OF THE SEARCH OF THE DEFENDANT'S PERSON CT Page 1425-aq The defendant also contends that even if "the weapon patdown of the Defendant was lawful," Reese's search of his person exceeded its lawful purpose. Defendant's Revised Motion to Suppress, March 1, 1999. The state argues that Connecticut law permits an investigating officer to seize contraband, in addition to weapons, during a legitimate patdown search. The court finds these issues in favor of the state.
As noted above, Reese was permitted to conduct a full search of the defendant incident to his arrest for loitering on school grounds. Thus, in this state, the search incident to arrest "exception permits a police officer to conduct a full search of an arrestee and to seize evidence as well as weapons. See Chimelv. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034,23 L.Ed.2d 685, reh. denied, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124
(1969); State v. Copeland, [205 Conn. 201, 210-11, 530 A.2d 603
(1987)]; State v. Guertin, 190 Conn. 440, 454, 461 A.2d 963
(1983)." State v. Trine, supra, 236 Conn. 235-36. Therefore, searching the defendant's jacket pockets, where the flashlight, extra radio battery and prescription bottle were found, and seizing these items, was not outside the constitutionally permissible scope of the search. State v. Trine, supra,236 Conn. 235-236.
Connecticut has also examined and resolved the issue of whether article first, § 7 bars or permits the seizure of nonthreatening contraband detected through the sense of touch during a lawful patdown search, and during a search incident to an arrest. The Supreme Court has concluded "that information obtained through the sense of touch during a lawful patdown search may be used to establish such probable cause as is necessary to trigger an exception to the warrant requirement [for search or seizure." State v. Trine, supra, 236 Conn. 234. In this matter, during his lawful patdown search of the defendant; Reese felt an object which, while not consonant with the contours of a weapon, was consistent with a medication container. Reese conducted this patdown search, not in a "factual vacuum" but in reliance upon his twenty years of experience as a police officer.State v. Trine, supra, 236 Conn. 239-40. This container, placed in evidence, was hard, cylindrical in shape and sufficiently CT Page 1425-ar bulky to represent packaging that could be used for the storage of contraband or illegal drugs. Despite vigorous cross-examination on this subject; there was was no evidence presented from which the court could conclude that Reese had manipulated this object as it was discerned during the patdown search. See State v. Trine, supra, 236 Conn. 226. Therefore, it was constitutionally valid for Reese, under the circumstances of this patdown search, to seize this object from the defendant. Id., 227.
 III SEARCH OF THE VEHICLE
The defendant next claims that the search of the car in which he was a passenger was unlawful, and the scope of that search exceeded its lawful purpose. The defendant specifically asserts that he held a possessory interest and a reasonable expectation of privacy in the vehicle because of his relationship with Wiegand. In response, the state claims that the defendant, as a passenger, does not have standing to challenge the search of the vehicle. The court finds these issues in favor of the state.
 A MOTOR VEHICLE PASSENGER'S EXPECTATION OF PRIVACY
It is generally held that "[i]n order to challenge a search or seizure on fourth amendment grounds, a defendant must show that he has a reasonable expectation of privacy in the place searched. See Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421,58 L.Ed.2d 387 (1978). A passenger in a motor vehicle, who fails to demonstrate a possessory interest in the car itself or in any of the seized evidence, has no reasonable expectation of privacy in the area of the vehicle searched, and thus is precluded from contesting the validity of the search. . . . State v. Burns,23 Conn. App. 602, 611-12, 583 A.2d 1296 (1990)." (Internal quotation marks omitted.) State v. Ortiz, 47 Conn. App. 333, 337,705 A.2d 554 (1997), cert. denied, 244 Conn. 902, 710 A.2d 175
CT Page 1425-as (1998). See also State v. Delarosa, 16 Conn. App. 18, 32,547 A.2d 47 (1988).
The defendant has failed to show any reasonable basis for the defendant's professed expectation of privacy in the vehicle or its contents, which included the closed box located in the rear seat. While the defendant has relied on his relationship with Wiegand to establish a basis for his expectation of privacy in the passenger compartment of the motor vehicle he occupied on September 30, 1996, the reliance upon this relationship is without avail. Furthermore, although police investigation, subsequent to the incident, in fact revealed that the Mitsubishi was registered to Donna Maloney, a known alias for Wiegand, this information does not increase the constitutional protections afforded to the defendant; either. In this matter, the state has alleged that the defendant was a co-conspirator planning, with Wiegand and others, to commit the crimes at issue. "Participants in a criminal conspiracy may have such expectations or interests [in the privacy of an area being searched], but the conspiracy itself neither adds to nor detracts from them." United States v.Padilla, 508 U.S. 77, 82, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993). "Coconspirators and codefendants have been accorded no special standing." Id.
There is insufficient evidence from which the court could reasonably conclude that the defendant asserted any possessory interest in the vehicle or its contents, including the two-way radios, the cellular phones, the documents or any other evidence found in the vehicle. The only connection the defendant presents as evidence of a possessory interest is the defendant's relationship with Wiegand, the ostensible donor or the medication in his possession, now known to be the owner of the vehicle in question. As noted above, the fact that the defendant and Wiegand may be co-conspirators does not add to or detract from the defendant's interest in the vehicle or its contents. The defendant, therefore, is found to lack standing to challenge the search of the vehicle. State v. Ortiz, supra, 47 Conn. App. 337.
 B CT Page 1425-at SEARCH PURSUANT TO THE AUTOMOBILE EXCEPTION
Even if lawful standing to contest Reese's entry into the vehicle and the seizure of its contents could be attributed to the defendant, the search of the Mitsubishi was valid pursuant to noted exceptions to the warrant requirement. As stated previously, a detaining officer may conduct an investigative stop of a suspect to confirm or dispel his concerns about particular circumstances when he has a reasonable and articulable suspicion "that an individual is engaged in or is about to engage in criminal activity." State v. Groomes, supra, 232 Conn. 467-68. See also State v. Kyles, supra, 221 Conn. 660. If the officer reasonably believes that the detained individual might be dangerous, he or she may conduct a patdown search of the individual. See State v. Wilkins, supra, 240 Conn. 495-96. Additionally, Connecticut has approved the practice under which, pursuant to "the federal constitution, an officer conducting aTerry stop of an automobile may search the passenger compartment of the automobile for weapons, limited to areas where the weapon might be hidden, if he or she reasonably believes the suspect is potentially dangerous. Michigan v. Long, 463 U.S. 1032, 1049,103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." State v. Wilkins, supra,240 Conn. 496.
In this case, Reese entered the vehicle after having conducted a patdown of the defendant and his companion, JRG, during which a weapon, a sheathed knife, was revealed upon JRG's person. Thus, it was appropriate for Reese's concern about the presence of dangerous weapons in the vehicle to be heightened after the patdown, and his entry into the vehicle was justified to perform a search of the passenger compartment limited to areas where a weapon might be hidden. See State v. Waller, 223 Conn. 283, 292,612 A.2d 1189 (1990). Reese's credible testimony provided that he first saw the two-way radios on the front floor of the vehicle, then he observed a schedule for student and administrative activities at the McAllister School, also in plain view in the back area behind the operator's seat. Reese's search, retrieving items from the passenger compartment; was thus properly restricted to the area where the defendant or the operator might CT Page 1425-au have dropped something from his hands or have secreted an item that, within reach, could cause harm to the investigating officer. See State v. Wilkins, supra, 240 Conn. 503.
Upon discovery of these items, and with the officer's foreknowledge of the prior unlawful detention of Jonathan Wiegand from the state of Connecticut, Reese possessed enough facts to support an objective finding of probable cause that there may be additional evidence of the crime of attempted kidnapping in the vehicle justifying a further search of the vehicle and its contents.[7] "[T]he fourth amendment is not violated by a roadside warrantless search of an automobile if the police have probable cause to search the automobile and if obtaining a warrant would be impracticable because of the possibility that the automobile will be moved out of the jurisdiction. The rule . . . has come to be called the automobile exception to the warrant requirement. Connecticut recognizes this exception as a matter of state constitutional law. See e.g., State v. Dukes,209 Conn. 98, 126, 547 A.2d 10 (1988)." State v. Miller,227 Conn. 363, 378, 630 A.2d 1315 (1993). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search . . . The scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found." (Citations omitted; internal quotation marks omitted.) State v. Longo, 243 Conn. 732, 738, 708 A.2d 1354
(1998).[8] "`[O]ur Supreme Court has recognized that article first, § 7, of the Connecticut constitution contains an automobile exception to its warrant requirement, under which the police may search the passenger compartment of an automobile, including closed containers therein, on the roadside, upon probable cause to believe that they contain the fruits or instrumentalities of a crime'." (Citations omitted.) State v.Longo, supra, 740-41.
In this matter, as in Longo, Reese had probable cause to believe that there might have been other documents, tools and devices relating to a kidnapping in the vehicle. This objective conclusion derived from his plain view of the school schedule CT Page 1425-av lying on the floor of the back seat behind the operator's seat, his observation of the Nevada license plates, and his knowledge that the Wiegand children had, on prior occasion, been detained in the state of Nevada. Reese had probable cause to believe further evidence of an attempted kidnapping may be in the vehicle from these factors and his total prior knowledge concerning the heightened security surrounding the Wiegand boys while at school, compounded by the failure of the Mitsubishi's two occupants to provide a credible explanation for their presence in the parking lot. Based upon his discovery of the knife upon the defendant's companion, the extra batteries for the radios and the flashlights on the persons of the two suspects, the discovery of the prescription pill container with Wiegand's name on it and the discovery of the school schedule in the vehicle, Reese had ample probable cause for searching every part of the vehicle and any containers including the closed box where items such as additional school documents, correspondence from Wiegand or other co-conspirators, tools including tape or rope that might be used in a kidnapping could reasonably have been stored. State v.Longo, supra, 243 Conn. 741. Reese's further search of the vehicle on the parking lot was, therefore, justified by the automobile exception to the warrant requirement. See State v.Longo, supra, 243 Conn. 740-41; State v. Miller, supra,227 Conn. 378.
 C INVENTORY SEARCH OF THE VEHICLE
Reese's credible testimony established that not all of the items found in the Mitsubishi were removed from the vehicle at the scene; some items were removed after the vehicle was towed to the police station. The subsequent search of the vehicle at the Suffield police department was justified as an inventory search, "a well-defined exception to the warrant requirement. Illinois v.Lafayette, 462 U.S. 640, 643, 103 S.Ct. 2605, 77 L.Ed.2d 65
(1983); Michigan v. Thomas, 458 U.S. 259, 260, 102 S.Ct. 3079,73 L.Ed.2d 750 (1982). In the performance of their community caretaking functions, the police are frequently obliged to take automobiles into their custody. South Dakota v. Opperman, CT Page 1425-aw428 U.S. 364, 368, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); Cady v.Dombroski, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706
(1973). A standardized procedure for making a list or inventory as soon as reasonable after reaching the station house not only deters false claims but also inhibits theft or careless handling or articles taken from the arrested person. Illinois v.Lafeyette, supra, 646." (Internal quotation marks omitted.) Statev. Gasparro, 194 Conn. 96, 107-108, 480 A.2d 509 (1984), cert. denied, 474 U.S. 828, 106 S.Ct. 90, 88 L.Ed.2d 74 (1985). See also State v. Badgett, 200 Conn. 412, 431, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S.Ct. 423, 93 L.Ed.2d 373 (1986). Three clarion governmental interests support inventory searches: (1) protection of the police from danger; (2) protection of the police against claims and disputes over lost or stolen property (3) protection of the owner's property while it remains in police custody." (Internal quotation marks omitted.) State v. Hicks,53 Conn. App. 470, 475-76, 730 A.2d 649 (1999).
It was the customary practice of the Suffield Police Department to conduct an inventory search of any vehicle that was is to be taken into custody. Such a protocol is concordant with Connecticut law. See State v. Hicks, supra, 53 Conn. App. 476. Accordingly, the search of the entire Mitsubishi vehicle, performed by police personnel after its transport to the police station, was justified as an inventory search, in effectuation of the policy interests noted above. Id., 475-76.
 D INEVITABLE DISCOVERY
Lastly, even if the defendant possessed standing to challenge the search at issue, and Reese did not have justification to search the passenger compartment of the car at the scene of the defendant's arrest, the evidence within the Mitsubishi would have been discovered inevitably, because the arresting authorities would likely have conducted an inventory search of the vehicle at the police station.
"Under the inevitable discovery rule, evidence illegally CT Page 1425-ax secured in violation of the defendant's constitutional rights need not be suppressed if the state demonstrates by a preponderance of the evidence that the evidence would have been ultimately discovered by lawful means. [Nix v. Williams,467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).] To qualify for admissibility the state must demonstrate that the lawful means which made discovery inevitable were possessed by the police and were being actively pursued prior to the occurrence of the constitutional violation. United States v. Cherry, 759 F.2d 827, 846 (11thCir. 1985). In Nix v. Williams, supra, 443, the United States Supreme Court observed that the operation of the exclusionary rule in situations where the police would have inevitably discovered the evidence by legal means already initiated would put the state in a worse position than it would have been in if no police misconduct had transpired. Fairness can be assured by placing the State and the accused in the same positions they would have been in had the impermissible conduct not taken place. Id., 447. State v. Badgett [supra,200 Conn. 433]." (Internal quotation marks omitted.) State v. Vargas,34 Conn. App. 592, 499, 642 A.2d 47, cert. denied, 230 Conn. 907,644 A.2d 921 (1994).
The credible evidence in this case establishes, by a preponderance of the evidence that prior to entering the Mitsubishi, Reese had probable cause to believe that the occupants were loitering on school grounds, in violation of §53a-185. Subsequent to his initial verbal contacts with the occupants, he determined that the operator was criminally possessing a weapon. Thus, the defendants were placed in a position where they could formally have been placed under arrest and taken to the Suffield police station for processing, whether or not Reese had conducted a search of the vehicle at the scene, even before his requested back-up assistance had arrived at that location. Had the vehicle not been searched at the McAllister School, it was subject to being impounded and its contents were subject to being inventoried on a subsequent occasion, according to usual and customary Suffield police department protocol, in effect at the time Reese asked for back-up. Thus, the evidence at issue, contained within the Mitsubishi at the time it entered upon the grounds of the McAllister Middle School parking lot, CT Page 1425-ay would have been inevitably discovered by lawful means, even if its seizure at the scene was in derogation of the defendant's constitutional rights. See State v. Badgett, supra,200 Conn. 433; State v. Vargas, supra, 34 Conn. App. 592.
 IV CONCLUSION
Based on the foregoing factual findings and principles of law, the court concludes that the evidence fails to demonstrate that the stop and search of the defendant upon the McAllister Middle School grounds, and the search of the vehicle in which the defendant was a passenger caused him to be subjected to any violation of his federal constitutional rights, nor of rights guaranteed by article first, §§ 7, 8, or 9 of the Connecticut constitution. Accordingly, the defendant's Revised Motion to Suppress, dated March 1, 1999, is hereby DENIED.
BY THE COURT,
N. Rubinow, J.